# Exhibit 2

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 277052 |
| Student's Name: | ▮▮▮▮▮▮▮▮▮▮ ("Student") |
| School District: | N.Y.C. Dept. of Ed., District # 02 |
| Hearing Officer: | Jaime Kotchek |
| Hearing Requested by: | Maylene Otero ("Parent") |
| Date Complaint Filed: | 7/2/2024 |
| Date of Hearings: | 8/27/2024 and 8/29/2024 |
| Record Closed Date: | 9/3/2024 |
| Date of Decision: | 9/3/2024 |

## BACKGROUND

Parent, through counsel, filed a Due Process Complaint ("DPC") on 7/2/2024.[1] In the DPC, Parent alleges that the Department of Education ("DOE" or "District") failed to offer Student a free appropriate public education ("FAPE") for the 2024-2025 school year.[2] Parent requests that the DOE remit payment for a.) Student's attendance at Private School, b.) an individual, full-time nurse, c.) special transportation, and d.) an independent neuropsychological examination.

## PROCEDURAL HISTORY

The undersigned Impartial Hearing Officer (IHO) was assigned to this matter on 7/3/2024. On 7/30/2024, the parties appeared for a Pre-Hearing Conference (PHC). On 7/30/2024, following the PHC, this IHO sent a Pre-Hearing Conference Summary and Order (PHCO), which contained directives and orders for the Due Process Hearing.[3] As per the PHCO, all subpoena requests were ordered to be made in writing at least five (5) business days from the date of the order.

On 8/9/2024, the District submitted three subpoena requests for documentation. On 8/12/2024, this IHO sent an email to the parties, declining to sign the District's subpoena request. This IHO advised that the subpoena request was untimely, as any subpoena request was required to be made within five (5) business days of the PHCO, which was due by 8/6/2024. This IHO further addressed the contents of the District's request.[4]

On 8/27/2024, the parties appeared for a Due Process Hearing. The District submitted Exhibits 1 through 19, and Parent submitted Exhibits A through C, which were admitted into the record. The District and Parent presented opening statements. The District did not produce any witnesses. Parent produced one witness via affidavit, the Deputy Director from the Private School. The District cross-examined the Parent's witness. On 8/29/2024, the parties presented closing statements.

---

[1] Ex. A
[2] Ex. A
[3] IHO Ex. I, PHCO
[4] IHO Ex. II, Emails

# FINDINGS OF FACT

After a full review of the record generated at the hearing, I make the following findings of fact and determinations.

Student is 16 years old and classified by the DOE as a student with Multiple Disabilities. Student is nonverbal and non-ambulatory. It is undisputed that Student has significant health issues that require significant support. Student's classification and entitlement to special education programming and services are undisputed.

*2/28/24 IEP*

In the Individualized Education Program ("IEP") dated 2/28/2024 ("2/28/24 IEP"), the CSE recommended that Student receive special education programs and services consisting of:

- Special Class, in all subjects, in a District 75 school, in a 12:1+(3:1), 35 periods per week;
- Adapted Physical Education, 3 periods per week;
- Occupational Therapy, individually, five (5) 60-minute sessions per week;
- Parent Counseling and Training, in a group, one 60-minute session per week;
- Physical Therapy, individually, five (5) 60-minute sessions per week;
- Full-time, individual, School Nurse Services;
- Speech-Language Therapy, individually, five (5) 60-minute sessions per week;
- Full Time Health Paraprofessional for ambulation, safety, and feeding;
- Assistive Technology, Dynamic Display Speech Generating Device, Table Mount and AT Service

The CSE recommended a 12-month school year. The IEP was to be implemented on 3/18/24 and reviewed by 2/28/25.

*District's Psychoeducational Evaluation dated 2/10/2022*

On 1/28/22, the District conducted a Psychoeducational Evaluation of Student and produced a report dated 2/10/2022. At the time, Student was 14 years old. The CSE had recommended a 6:1+1 in a special class, in a District 75 school, with five (5) 60-minute sessions of Individual Occupational Therapy, Physical Therapy and Speech-Language Therapy per week. The CSE also recommended an individual, full-time health paraprofessional, assistive technology, and parent counseling and training. The report noted that Student required adult support with all daily living activities. The District attempted, but was unable to conduct an intelligence test, due to the extent of the Student's brain based disability. Student was able to pick up objects. She communicated her needs through vocalization, gestures, and body movements.

*Private Contracts*

The Private School Enrollment Contract for the extended 2024-2025 school year, electronically signed by Parent on 6/20/24, demonstrates that Parent enrolled Student in Private School for the extended 2024-2025 school year, and the total cost of tuition is $343,100.60 ($213,000 base tuition and $130,100.60 in supplemental tuition).[5] The Special Transportation Contract for the extended 2024-2025 school year, electronically signed by Parent on 6/20/24, demonstrates that Parent retained Private Transportation Company to provide round-trip transportation for Student to Private School. The total cost of special transportation charged by Private Transportation Company is $191,111.00.[6] The Private Nurse Contract, signed by Parent on 8/18/24, demonstrates that Parent retained the Private Nurse Company to provide an individual nurse to Student during his attendance at Private School for the extended 2024-2025 school year, and the Private Nurse Company charges $333,608.

*Testimony of Deputy Director of Private School*

The Deputy Director of Private School testified that during the 2024-2025 extended school year, Student attends a 6:1:1 class setting, and receives one hour of occupational therapy, physical therapy, and speech-language therapy, daily. Student also receives vision services three times per week and music therapy. The Deputy Director testified that at Private School, academics are divided into four (4) domains, math, literacy, social skills, and transitions. At the hearing, he testified as to Student's goals and progress in each domain. For example, in math, Student's goal is to identify the numbers one through three; in social skills, her goal is to identify feelings; and in transitions, her goal is to identify common helpers, such as police officers. He further testified that in physical therapy, Student has been able to ambulate up to 40 feet and stand with minimal assistance. In occupational therapy, she is learning to tolerate toothbrushing.

The Deputy Director testified that the District's recommendation of a 12:1:4 in a District 75 school was inappropriate for the Student and that the setting was a safety risk for her. He further testified that in a District 75 school, Student would be with dissimilar peers, and those peers could pose a safety risk for Student because they could pull out her G tube. The Student is medically fragile, gets dysregulated by noise, and would be unable to focus in such a large classroom.

---

[5] Ex. A
[6] Ex. A

## CONCLUSIONS OF LAW AND ANALYSIS

*District's Motion to Dismiss*

The District moved to dismiss this case for Parent's failure to participate in a resolution meeting with the District. The District cites 8 N.Y.C.R.R. § 200.5(j)(2)(vi)(a), which states "[i]f the school district is unable to obtain the participation of the parent in the resolution meeting after reasonable efforts have been made (and documented), the school district may, at the conclusion of the 30-day period, request that an impartial hearing officer dismiss the parents' due process complaint" (see also 34 C.F.R. § 300.510[b][4]).

In its motion, the District acknowledged that a resolution meeting was held with Parent's counsel via Microsoft Teams. The District alleged that Parent's failure to attend the resolution meeting violated the statutory law. Other than referencing the statute's plain language, the District failed to cite any case law to support this argument. Further, the District asserted that Parent and counsel did not act in good faith. In response, Parent alleged that the District did not act in good faith.

The District's motion to dismiss is denied. The law does not require this case to be dismissed. Dismissal is a drastic remedy, which is not warranted based on the facts and circumstances herein. Moreover, the record established that Parent's counsel attended a CSE meeting. The District's arguments shall be examined under the equities.

*Burden*

In New York State, school districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement (NYS Educ. Law § 4404[1][c]).

*Burlington/Carter Test*

The Supreme Court established the *Burlington/Carter* test, to determine whether a parent is entitled to receive payment of a student's unilateral, private school tuition. A district must pay the cost of a student's tuition at a unilateral placement if: (1) the District denied the student a free appropriate public education ("FAPE"); (2) the unilateral placement is appropriate; and (3) the equities favor the parent (*see*

*Sch. Comm. of Burlington v Dep't of Educ.*, 471 U.S. 359 [1985]; *Florence County Sch. Dist. Four v Carter by & Through Carte*r, 510 U.S. 7 [1993]).

*Prong I*

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education (FAPE) (20 U.S.C. § 1400 [d][1][A]). A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program (IEP) (34 C.F.R. § 300.13). A school district has offered a student a FAPE when: (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits. (*see Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v Rowley*, 458 U.S. 176 [1982]). In order to meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances" (*Endrew F. v Douglas County Sch. Dist. RE-1*, 580 U.S. 386 [2017]).

As to Prong I of the *Burlington/Carter* standard, the DOE failed to meet its burden to demonstrate that it provided Student with a FAPE. While the DOE submitted the 2/28/24 IEP into the record, it offered no explanation as to how the CSE made its recommendation or whether the IEP was meaningfully calculated to confer educational benefit to Student.

At hearing, the DOE did not produce any witnesses and relied upon its documentary evidence to demonstrate that the DOE provided a FAPE to Student for the 2024-2025 school year. Courts and the State Review Office (SRO) have held that a district may establish that it provided a Student with a FAPE by relying only upon documentary evidence, without witness testimony. In order to establish a FAPE based only on documentary evidence, a district should offer all documentation relating to the evaluation of a student and the CSE's recommendations, including prior written notices (*see L.O. v. N.Y. City Dep't of Educ.*, 822 F.3d 95, [2nd Cir. 2016].

The SRO has held that the District establishes that it provided Student a FAPE on the documentary evidence when evidence is "sufficient for the IHO to address the particular issues raised by the parent;" and further, "the IEP adequately addressed the student's needs and that there was no contrary evidence that would rebut that conclusion" (*see* SRO Appeal No 23-129). In SRO-23-129, the District met its burden by offering the psychoeducational evaluation, progress reports, a social history update, prior written notice, and a school location letter in evidence (Id.).

Findings of Fact and Decision
Case No. 277052

In this instance, the DOE's evidence does not address the issues raised by Parent. In fact, the District's documentary evidence raises more questions than it answers. Specifically, the District's Psychoeducational Evaluation dated 1/28/22 states that the CSE recommended a 6:1:1 classroom. It is unclear from the record why the District changed its recommendation two years later to a 12:1 + (3+1) in the 2/28/24 IEP, which is a classroom double the size. There is no explanation provided in the 2/28/24 IEP for this change. Furthermore, the 2/28/24 IEP documents that Parent expressed concerns with the recommended class size, stating that Student was "highly affected by her environment," and became dysregulated when it was too loud or distracting. Parent stated that Student would be unable to function in a setting with loud bells and shared spaces. Parent expressed that Student previously attended a District 75 school and it was inappropriate. Parent requested that a 6:1:1 classroom be considered in a nonpublic setting. Parent believes Student was unsafe and "at risk" in a public-school setting. Under Reasons for Rejection, the 2/28/24 IEP only provided that other programs "would not meet Student's needs." The CSE provided no reasoning for its decision to reject Parent's concerns and failed to recommend a smaller classroom size. Additionally, the District's IEP minutes demonstrate Parent's same concerns and fail to provide any explanation for its recommendation.

Parent's witness' testimony supported its position that the District's program for Student for the 2024-2025 school year was inappropriate. The Private School's Deputy Director of Special Education ("Deputy Director") testified that the District's recommendation of a 12:1:4 in a District 75 school was inappropriate because it posed a significant safety risk for Student. He testified that in a District 75 school, Student would be in a classroom with dissimilar peers, and those peers could harm the medically fragile Student, who has exposed medical tubes. He testified that Student becomes dysregulated by noise, and would be unable to focus in such a large classroom, and in a school setting with bells and loud noises. The District did not present any evidence or witness to address or rebut the Deputy Director's assertions.

Moreover, Parent alleges that the District failed to provide Student with a transportation nurse. While the District included specialized transportation in the 2/28/24 IEP, it did not provide a travel nurse, despite recommending one during the school day, thus acknowledging that Student medically required a full-time, individual nurse. The District did not provide evidence to address or rebut this contention. Parent also alleges that the 2/28/24 IEP failed to address Student's vision needs by failing to provide any visual education services.

Therefore, the DOE did not "offer a cogent and responsive explanation for their decisions that shows that IEP is reasonably calculated to enable the child to make progress appropriate in light of his

circumstances" (*Id.* at 404*).* And *"*it is through the IEP that the free appropriate public education required by the Act is tailored to the unique needs of a particular child" (internal citations omitted) (*Id.* at 399; citing *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v Rowley*, 458 U.S. 176 [1982]).

*Prong II*

A private school placement must be "proper under the Act" (*see Florence County Sch. Dist. Four v Carter*, 510 U.S. 7 [1993]; *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 [1985]). This means that the private school must offer an educational program, which meets the student's special education needs (*see Gagliardo v Arlington Cent. Sch. Dist.*, 489 F.3d 105 [2d Cir. 2007]; *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119 [2d Cir. 1998]). Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate" (*Gagliardo v Arlington Cent. Sch. Dist.*, 489 F.3d 105 [2d Cir. 2007]).

"Subject to certain limited exceptions, the same considerations and criteria that apply in determining whether the school district's placement is appropriate should be considered in determining the appropriateness of the parents' placement… The issue turns on whether a placement- public or private- is reasonably calculated to enable the child to receive educational benefits" (internal quotations omitted) (*Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356 [2d Cir. 2006] [quoting *Rowley,* 458 U.S. at 207]). "A private placement meeting this standard is one that is likely to produce progress, not regression" (internal quotations omitted) (citing *Walczak* at 130).

"No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction" (*see Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364).

A private placement is appropriate if it provides instruction specially designed to meet a student's unique needs. (*see* 20 U.S.C. § 1401 [29]; Educ. Law § 4401 [1]; 34 CFR 300.39 [a] [1]; 8 NYCRR 200.1 [ww]; *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372 [2d Cir. 2014]).

Private School specializes in teaching students with brain-based injuries or disorders, like Student. It provides a 12-month extended school year to students, and class hours are 8:30a.m. to 5:00p.m. Every Student is provided with an individual paraprofessional to assist with daily living activities. Private School provides a highly structured, supported environment.

The Deputy Director of Private School testified that during the 2024-2025 extended school year, Student attends a 6:1:1 class setting. Student receives assistance from a full-time individual paraprofessional and nurse. She receives one hour of daily occupational therapy, physical therapy, and speech-language therapy. Student also receives vision education services three times per week and music therapy daily. She utilizes assistive technology to communicate and is provided with assistive technology services once per week. The Deputy Director testified that at Private School, academics are divided into four (4) domains, math, literacy, social skills, and transitions. He testified in detail as to Student's goals and progress in each domain and each related service.

The District asserted that the Parent failed to demonstrate that the Private School is appropriate because they failed to provide a class schedule, records or reports from teachers and service providers. However, the hearing record, which includes an affidavit and live testimony from the Deputy Director of the Private School, and an Education Plan from Private School, sufficiently established that the program for the Student is appropriate.

Accordingly, the Parents established that Private School is appropriate and offers an educational program to Student that meets her special education needs, under Prong II of the *Burlington/Carter* standard.

*Prong III- Equities*

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant" (*Forest Grove Sch. Dist. v T.A.*, 557 U.S. 230 [2009]). "In making that equitable determination, a hearing officer may consider many factors, including, inter alia, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate notice of the withdrawal, whether the amount of private-school tuition was reasonable, whether the parent should have availed herself of

need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect" (*see E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 [2d Cir. 2014]).

The District and Parent both argued that the other acted in bad faith during the special education process, which should weigh against them in the equities. I find neither argument compelling nor necessitating a reduction of funding in this instance.

Having reviewed the Private School contract, the tuition for the extended 2024-2025 school year is $343,100.60. The District did not address the reasonableness of the costs, or provide evidence regarding the market rate for similar services. Thus, nothing in the record supports a reduction of the contracted rates.

The District asserted that Parent is not liable to pay tuition at Private School, based upon a printout from the Private School website, which states that Parent's financial obligations are suspended. This alone does not establish that Parent is not liable for tuition costs at Private School. To the contrary, the signed contract signed by Parent and the Private School, demonstrates that Parent is responsible for the tuition costs for the 2024-2025 school year. The fact that a school defers or suspends payment does not invalidate the contract or relieve the parent of their obligation to pay for the services. The promissee may enforce a contract where it "has incurred a specific, bargained-for legal detriment, [ ] notwithstanding the fact that [it] may have realized no concrete benefit as a result of the bargain."[7]

*Special Transportation and Nursing Service*

Additionally, Parent requests that the District fund private specialized transportation and a private nurse during the 2024-2025 extended school year. It is undisputed that Student requires special roundtrip transportation and a full-time nurse, given her significant and severe medical issues and needs. Having reviewed the Private Transportation Contract and the Private Nurse Contract, the cost of transportation for the extended 2024-2025 school year is $191,111.00 and the cost of a private nurse for the extended 2024-2025 school year is $333,608. The District provided no evidence regarding a reasonable market rate for these services, nor did it offer to provide the same services from a less expensive provider.

---

[7] *Toobian v Golzad*, 193 AD3d 778, 783 [2d Dept. 2021]

In opposition, the District asserts that Parent did not submit documentation demonstrating that Student has utilized these services during the school year at issue, and no witnesses regarding the services. Notably, as per the orders below, in order for the services to be funded by the District, Parent must submit proof that Student utilizes these services.

Lastly, the District's assertions that the Private School, service providers, and counsel have a conflict of interest is not within the jurisdiction of this tribunal. Additionally, the District did not provide evidence regarding its claim. These arguments have not been considered herein.

*Independent Neuropsychological Evaluation*

Parent requests that the District fund an independent neuropsychological evaluation. Parent's counsel asserted that Parent requested an independent neuropsychological evaluation at the 2/28/24 IEP meeting, and again in the ten-day notice. Parent was not produced as a witness; thus, did not testify as to this request. However, the ten-day notice dated July 2, 2024, demonstrates that Parent requested the IEE. Therefore, the District was on notice of the request.

An Independent Educational Evaluation ("IEE") is "an individual evaluation of a student with a disability or a student thought to have a disability, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the student." 8 NYCRR § 200.1(z).

The IDEA and State and federal regulations allow a parent to request an IEE at public expense if the parent disagrees with a school district's evaluation. 20 U.S.C. § 1415 (b)(1); 34 C.F.R. § 300.502(b); 8 NYCRR § 200.5(g)(1); *D.S. by M.S. and R.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 158 (2d Cir. 2020) ("[a] parent is entitled to a publicly funded IEE if the parent disagrees with an evaluation obtained by the public agency") (internal quotation marks and citations omitted). In *Shaffer v. Weast*, the Supreme Court explained the role an IEE plays in parental participation and the IDEA's regulatory scheme as follows: "[an IEE] ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition." 546 U.S. 49, 60-61 (2005).

If a parent requests an IEE, the school district must provide the parent with information about where they can obtain an IEE. 8 NYCRR § 200.5(g)(1)(i). A school district can set criteria regarding the IEE, including the qualifications of the examiner, but the district's criteria must be the same as the criteria it uses for its own evaluations, and the district cannot impose additional conditions or timelines related to

the IEE. 34 C.F.R. § 300.502(e)(1); 8 NYCRR § 200.5(g)(1)(ii); *Letter to Kirby*, 213 IDELR 233 (OSERS 1989). For example, a school district may not compel the use of a particular evaluator or its own chosen evaluator for an IEE (*Board of Education of the County of Nicholas v. H.A*., 445 F. App'x 660 (4th Cir. 2011)), nor can it deny an IEE at public expense based solely on financial cost. *Letter of OSERS*, 2002. A parent's right to an IEE at public expense may not be conditioned on the school district's ability to first conduct its own assessment before granting the parent's request for an independent IEE. *Letter to Carroll*, 68 IDELR 279 (OSEP 2016). Finally, while the school district may "ask for the parent's reason why he or she objects to the public evaluation," the district cannot require an explanation or delay providing the IEE until the parent provides an explanation. 8 NYCRR § 200.5(g)(1)(iii).

When a parent disagrees with a school district's evaluation and requests an IEE at public expense, the school district "*must, without unnecessary delay*," either (1) ensure that an IEE is provided at public expense; or (2) initiate an impartial hearing to establish that its evaluation is appropriate or that the evaluation obtained by the parent does not meet the school district criteria. 34 C.F.R. § 300.502(b)(2)(i)-(ii); 8 NYCRR § 200.5(g)(1)(iv) (emphasis added).

A parent is entitled to an IEE when the district does not conduct a sufficiently comprehensive evaluation or fails to test the student in an area of need. *D.S. v. Trumbull Bd. of Educ.*, 975 F.3d 152, 165 (2d Cir. 2020). In *D.S.*, the court stated that, "[n]othing in the statute or regulations suggests that a parent cannot challenge an evaluation on the ground that it was too limited. To the contrary, because the IDEA requires an evaluation to be comprehensive, one would expect that a parent is free to disagree with an evaluation based on its deficient scope." *Id.* The U.S. Department of Education's Office of Special Education Programs ("OSEP"), has similarly stated that when a parent disagrees with an evaluation because a child was not assessed in a particular area, "the parent has the right to request an IEE to assess the child in that area to determine whether the child has a disability and the nature and extent of the special education and related services that child needs." *Letter to Baus*, 65 IDELR 81 (OSEP 2015); see also *Letter to Carroll*, 68 IDELR 279 (OSEP 2016).

A school district may establish criteria to ensure that the cost of an IEE at public expense is reasonable. However, in this instance, the District failed to offer any evidence as to reasonable costs

Here, the record supports Parent's request for the IEE. The District was aware of Parent's request for the IEE and did not initiate an impartial hearing to establish that its evaluations were appropriate, nor did it take the necessary action to ensure that the Parent's requested IEE was provided at public expense.

Therefore, Parent is entitled to have the requested IEE conducted at public expense by a duly qualified evaluator selected by Parent.

Lastly, pendency is now moot. A decision has been rendered and the Parent is awarded its entire request, herein.

After considering the entire record, I find that Parent's requested relief is appropriate and the equities support Parent's request for tuition at Private School for the 2024-2025 school year, transportation, a private nurse, and an independent neuropsychological evaluation.

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED** that

Parents' claim for funding for Student's unilateral placement at the Private School is GRANTED for the 2024-2025 school year as follows:

1. The District shall pay directly to Private School, tuition, up to a total of $343,100.60, within 30 days of submission of a signed, notarized bill encompassing tuition costs owed by the Parent to the Private School for the Student's attendance at the Private School for the extended 2024-2025 school year; and it is further,

2. The District shall pay directly to the Transportation Company, up to a total of $191,111.00, within 30 days of submission of a signed, notarized bill encompassing costs owed by the Parent to the Transportation Company for the Student's use of transportation service to and from Private School for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service; and it is further,

3. The District shall pay directly to the Nurse Company, up to a total of $333,608, within 30 days of submission of a signed, notarized bill encompassing costs owed by the Parent to the Nurse Company for the Student's individual, full-time nurse during transportation to and from Private School, and Student's attendance at Private School, for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service; and it is further,

4. The District shall fund an Independent Neuropsychological Evaluation, conducted by a provider of Parent's choosing, at their contracted rate.

Dated: September 3, 2024

*Jaime Kotchek*
Jaime Kotchek
Impartial Hearing Officer

Findings of Fact and Decision
Case No. 277052

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public-School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

# APPENDIX A – DOCUMENTATION ENTERED INTO THE RECORD

**PARENT EXHIBITS**

| A | 07/02/2024 | Due Process Complaint | 56 |
|---|---|---|---|
|  | 06/14/2024 | Exhibit A-A Ten Day Notice | (Pages 11-12 in DPC) |
|  | 07/02/2024 | Exhibit A-B Pendency Implementation Form | (Page 13 in DPC) |
|  | 01/18/2024 | Exhibit A-C FOFD 205442 | (Pages 14-32 in DPC) |
|  | Undated | Exhibit A-D Order Of Pendency | (Pages 33-34 in DPC) |
|  | 06/21/2024 | Exhibit A-E Private School Enrollment Contract | (Pages 35-41 in DPC) |
|  | 06/20/2024 | Exhibit A-F Transportation Agreement | (Pages 42-48 in DPC) |
|  | 06/20/2024 | Exhibit A-G Nursing Service Agreement | (Pages 49-56 in DPC) |
| B | 06/13/2024 | Private School Education Plan 2024-25 School Year | 69 |
| C | 08/20/2024 | Affidavit of Deputy Director from Private School | 6 |

**DOE EXHIBITS**

| 1 | Due Process Response, IH # 277052 | 07/12/2024 | 5 |
|---|---|---|---|
| 2 | E-mails regarding resolution | 07/11-24/2024 | 10 |
| 3 | Individualized Education Program | 02/28/2024 | 53 |

Findings of Fact and Decision
Case No. 277052

| | | | |
|---|---|---|---|
| 4 | Prior Written Notice (Notice of Recommendation) | 06/12/2024 | 8 |
| 5 | School Location Letter | 06/12/2024 | 3 |
| 6 | Private School report and education plan | 01/22/2024 | 63 |
| 7 | Meeting minutes | 02/28/2024 | 6 |
| 8 | Private School Quarterly Progress Report | 10/06/2023 | 27 |
| 9 | Private School Quarterly Progress Report | 01/05/2024 | 23 |
| 10 | Level 1 Vocational Assessment - Student | 01/18/2024 | 2 |
| 11 | Psychoeducational Evaluation | 01/28/2022 | 5 |
| 12 | Nursing documents received | 11/01-06/2023 | 13 |
| 13 | DOE nursing referral | 01/30/2024 | 2 |
| 14 | Letter from DOE Office of Pupil Transportation | 07/11/2024 | 1 |
| 15 | Special Education Student Information System (SESIS) Events for this student | 08/14/2012-07/23/2024 | 34 |
| 16 | Private School About us | 08/20/2024 | 11 |
| 17 | E-mails regarding DOE's proposed NPW document subpoenas | 07/30/2024-08/13/2024 | 4 |
| 18 | DOE E-mail re: pendency position | 08/02-09/2024 | 3 |
| 19 | Due Process Complaint | 07/02/2024 | 10 |

**IHO EXHIBITS**

| | | | |
|---|---|---|---|
| IHO Ex. I | PHCO | 7/30/2024 | 5 |
| IHO Ex. II | Emails re Subpoenas | Various Dates | 4 |
| IHO Ex. III | District's Motion to Dismiss | 8/20/2024 | 6 |
| IHO Ex. IV | Parent's Opposition | 8/26/2024 | 22 |
| IHO Ex. V | District's Reply | 8/27/2024 | 3 |

## APPENDIX B – REDACTION IDENTIFICATION PAGE

| Term Used In FOFD | Redacted Information |
|---|---|
| Student | ███████████ |
| Parent | Maylene Otero |
| Parent Attorney/Representative | Richa Ragute |
| District Attorney/Representative | Jeremy Ribakove |
| Private School | International Academy for the Brain (iBrain) |
| Deputy Director | Caleb Asomugha |
| Transportation Company | Sisters Travel and Transportation Services, LLC |
| Nursing Company | B&H Healthcare Services, Inc. DBA as Park Avenue Home Care |