# EXHIBIT 3



## The University of the State of New York

**The State Education Department**
State Review Officer
www.sro.nysed.gov

No. 24-444

**Application of a STUDENT WITH A DISABILITY, by her parent, for review of a determination of a hearing officer relating to the provision of educational services by the New York City Department of Education**

**Appearances:**
Liberty & Freedom Legal Group, attorneys for petitioner, by Peter G. Albert, Esq.

Liz Vladeck, General Counsel, attorneys for respondent, by Thomas W. MacLeod, Esq.

**DECISION**

**I. Introduction**

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioner (the parent) appeals from a decision of an impartial hearing officer (IHO) which denied in part their request for the costs of nursing and transportation services for the 2024-25 school year. The district cross-appeals from the IHO's denial of the district's motion to dismiss the parent's due process complaint notice due to an alleged failure to participate in a resolution meeting. The appeal must be dismissed. The cross-appeal must be dismissed.

**II. Overview—Administrative Procedures**

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C.

§§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[*l*]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]). First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]). An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]). The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]). A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]). The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]). The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4). The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5). The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]). The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

### III. Facts and Procedural History

The parties' familiarity with this matter is presumed and, therefore, the facts and procedural history of the case and the IHO's decision will not be recited here in detail. Briefly, the student has a complex medical history and has received diagnoses of hydrocephalus, cerebral palsy; she is also reported as having global developmental delays, sialorrhea, hypoglycemia, and osteopenia and had both gastrostomy and jejunostomy tubes (Parent Ex. B; Dist. Exs. 3; 6; 11; 12).

The student was first enrolled at iBrain in October 2020 (Parent Ex. A-C; see Parent Ex. A at p. 2).

A CSE convened on February 28, 2024, found the student eligible for special education as a student with multiple disabilities and developed an IEP for the student with an implementation date of March 18, 2024 (Dist. Ex. 3 at p. 1). The February 2024 CSE recommended that the student be placed in a 12:1+(3:1) special class for 35 periods per week, receive three period per week of adapted physical education, five 60-minute sessions per week of individual occupational therapy (OT), five 60-minute sessions per week of individual physical therapy (PT), five 60-minute sessions per week of individual speech-language therapy, as well as full-time individual school nurse services and full-time individual paraprofessional services (id. at p. 45). The CSE further recommended one 60-minute session per month of parent counseling and training and that the student be provided with a dynamic display speech generating device and table mount along with one 60-minute session per week of assistive technology services (id.). The CSE also recommended that the student receive the same special education program and services for the 12-month portion of the school year (id. at p. 46). In addition, the CSE recommended that the student receive special transportation including transportation from the closest safe curb location to school and the support of 1:1 paraprofessional services (id.at p. 49).[1]

In a letter dated June 14, 2024, the parent informed the district that she was rejecting the district's recommended educational program as she believed it was not designed for the student to receive an educational benefit and it could not be implemented (Parent Ex. A-A).

On June 20, 2024, the parent electronically signed an enrollment contract for the student to attend iBrain from July 2, 2024 until June 27, 2025 (Parent Ex. A-E).[2] On the same day, June 20, 2024, the parent electronically signed a school transportation annual service agreement with Sisters Travel and Transportation Services, LLC (Sisters Travel) and a nursing services agreement with B&H Health Care Services, Inc. (B&H Health Care) (Parent Ex. A-F; A-G).

### A. Due Process Complaint Notice and Subsequent Events

The parent filed a due process complaint notice on July 2, 2024 alleging that the district denied the student a free appropriate public education (FAPE) for the 2024-25 extended school year (Parent Ex. A). According to the parent, the district failed to evaluate the student in all areas of suspected disability, failed to recommend appropriate related services, including 1:1 skilled nursing services during transit, music therapy, and vision education services, and failed to send a prior written notice or school location letter for the 2024-25 school year (id. at pp. 6-8). As part of the parent's requested remedies, she asked for an immediate resolution meeting to be held with the appropriate participants and an interim decision regarding the student's pendency placement seeking the cost of services from the district for iBrain, Sisters Travel, and B&H Health Care (id.

---

[1] On June 12, 2024, the district sent a prior written notice to the parent advising of the February 2024 CSE's recommendations and a school location letter identifying the school where the student's services would be provided (Dist. Ex. 4 at pp. 1-3; Dist. Ex. 5 at pp. 1-3).

[2] The parent signed the enrollment agreement on June 20, 2021 and the school representative signed the agreement on June 21, 2024 (Parent Ex. A-E at p. 6).

3

at p. 1).³  Additionally, the parent requested a determination that iBrain was an appropriate placement for the student, an order declaring that equitable considerations favor full funding at iBrain for the 2024-25 school year, an order directing payment for the full cost of tuition and related services for the 2024-25 school year pursuant to the enrollment agreement between the parent and iBrain, direct payment/prospective funding for 1:1 nursing services in accordance with the agreement between the parent and B&H Health Care for the 2024-25 school year, direct payment/prospective funding of special transportation services pursuant to the transportation agreement with Sisters Travel, a new CSE meeting "if necessary" and an order for an independent neuropsychological evaluation (id. at pp. 9-10).

The district submitted a response to the parent's due process complaint notice (Dist. Ex. 1). In addition, in a letter dated July 11, 2024, the district advised the parent that it was prepared to transport the child to and from the nonpublic school every school day as per the special education transportation recommendations contained in an April 8, 2024 IEP and that the transportation would be at no cost to the parent (Dist. Ex .14).  The letter included information as to who to contact to arrange for transportation of the student (id.).

Between July 11, 2024 and July 24, 2024, the parties exchanged emails with the IHO and among themselves regarding the scheduling of a resolution meeting and discussing the parties' disagreement about the degree of decision-making authority that a district participant would be required to possess (see generally Dist. Ex. 2).

On July 11, 2024, a district representative sent an email to the parent informing her that a resolution meeting had been scheduled for July 12, 2024 (Dist. Ex. 2 at pp. 8-9).  On the same day, the parent's attorney responded to the district's email, confirming that "we will be attending the Resolution Meeting and will notify you of the Parent's attendance as well" (id. at pp.7-8).  In that same email, the parent's attorney asked that the district advise who would be attending the meeting and what authority they had to grant the various relief requested in the due process complaint notice (id.).  On the morning of July 12, 2024, a different attorney from the law firm for the parent responded to the district and asserted that the proposed resolution meeting was not proper because a mutually agreed date and time had not been reached and the district participants "d[id] not have decision-making authority to resolve ALL of the issues raised in the Parent's Due Process Complaint"; the attorney requested that the district send proposed dates and times for a properly constituted resolution meeting, along with the names and titles of the district participants and the authorization they had to resolve all issues (id. at p. 7).  In an email dated July 17, 2024, the district identified a district social worker as a district representative at the proposed resolution meeting, with the possibility that the CSE chairperson could also attend (id. at p. 6).  The email stated that the district social worker had decision-making authority as contemplated by the IDEA and asked if the parent was available on either Monday, July 23, 2024 at 9:30 a.m. or Monday, July 29, 2024

---

³ The parent requested that the district provide the student with pendency services based on an unappealed IHO decision dated November 30, 2021 (Parent Ex. A at p. 2; see Parent Ex. A-C).  Review of the proposed Order of Pendency attached to the due process complaint notice shows that it includes a request for funding of tuition, transportation, and nursing services, as does the due process complaint notice (see Parent Ex. A-D; Parent Ex. A at p. 2).  However, a pendency implementation form attached to the due process complaint notice does not mention nursing services or B&H Health Care (see Parent Ex. A-B).  Additionally, nursing services are not mentioned in the November 30, 2021 IHO Decision (see Parent Ex. A-C).

4

at 9:30 a.m. (id.). In an email dated July 17, 2024, the parent's counsel questioned the district social worker's authority to enter into an agreement binding the district "for over $300,000" and requested confirmation from "the NYC Office of the Comptroller and [the district's] Office of General Counsel" delegating "full decision-making authority to resolve the Student's [due process complaint notices]" to the district social worker (id. at p. 5). In an email dated July 18, 2024, the district counsel responded that the district representative was not required to "attend with a blank check to simply authorize funding for every point of relief the parent seeks," informed counsel for the parent that the resolution meeting was intended to allow an opportunity for the district and parent to discuss "the parent's underlying concerns giving rise to the due process complaint notice," and requested that the parent attend the meeting, as required (id. at p. 4).

On July 23, 2024, a resolution meeting was held via teleconference, with the CSE chairperson, district social worker, and two attorneys from the law firm representing the parent (Dist. Ex. 15 at p. 1). According to the notes kept by the district, the parent did not attend the meeting and her attorneys advised that having the parent present would not resolve any issues, she would not be joining any meetings, and her counsel was authorized to represent her and make decisions on her behalf for the student; in addition, according to the district's notations, parent's counsel stated that he intended to cancel all resolution meetings scheduled by the CSE moving forward and would send a confirming email shortly (id.).

In an email, dated July 24, 2024, counsel for the parent raised further objections regrading the resolution meeting and who was required to be present at the meeting (Dist. Ex. 2 at pp. 1-3). In an email dated July 24, 2024, the district counsel responded indicating that the emails were not productive and were contrary to the collaborative resolution process and all further disputes would be addressed at the hearing (Dist. Ex. at p. 1).

On July 30, 2024, the IHO held a prehearing conference with counsel for both parties and issued a prehearing conference summary and order (Tr. pp. 1-32; IHO Ex. 1 at p. 1).

On August 20, 2024, the district filed a motion to dismiss the parent's due process complaint notice alleging that the parent failed to participate in a resolution meeting despite the district's reasonable efforts to hold one (IHO Ex. III).

On August 26, 2024, the parent filed a response to the district's motion to dismiss alleging that the district did not convene a resolution meeting within 15 days of filing the due process complaint notice as required by State and federal regulation and that the proposed district attendees at the resolution meeting were not proper because they were not members of the CSE, they did not have specific knowledge of the facts set forth in the parent's due process complaint notice, and they did not have decision-making authority on behalf of the district (IHO Ex. IV).

On August 27, 2024, the district filed a reply to the parent's opposition to the motion to dismiss reiterating that the parent's failure to participate in the CSE meeting warranted dismissal of the due process complaint notice (IHO Ex. V).

### B. Impartial Hearing Officer Decision

An impartial hearing convened before the Office of Administrative Trials and Hearings (OATH) on August 27, 2024 and ended on August 29, 2024 after two days of proceedings (Tr. pp.

33-174). At the August 27, 2024 hearing, the IHO addressed the district's motion to dismiss (Tr. p. 46). Citing State regulations, the IHO noted that the district could "request" that the IHO dismiss the parent's due process complaint notice but the regulation did not require dismissal (id.) The IHO determined that the circumstances presented did not warrant dismissal as that is a drastic remedy; however, the IHO also noted that as each party alleged that the other acted in bad faith, these arguments could be made toward equitable considerations as part of the hearing (id.).

In a decision dated September 3, 2024, the IHO, after formally denying the district's motion to dismiss the due process complaint notice due to the parent's failure to attend the resolution meeting, found that the district failed to meet its burden to demonstrate that it provided the student with a FAPE for the 2024-25 school year, that the parent met her burden of showing that the unilateral placement of the student at iBrain was appropriate, and that equitable considerations weighed in favor of granting the parent's requested relief (IHO Decision at pp. 5, 6-11). Overall, the IHO found that the district failed to offer a "cogent and responsive explanation" to show that the IEP was reasonably calculated to enable the student to make progress in light of his circumstances (id. at pp. 7-8). The IHO then found that an affidavit and testimony from the deputy director of the private school and an iBrain education plan sufficiently established that iBrain was an appropriate placement for the student (id. at p. 9). As for the equitable considerations, the IHO found that neither party's argument that the other acted in bad faith during the resolution period compelled or necessitated a reduction of funding (id. at p. 10). The IHO found that tuition, the cost of transportation for the extended 2024-25 school year, and the cost of a private nurse should not be reduced as the district failed to rebut the parent's evidence regarding cost or provide evidence of market rates (id. at p. 10). In addition, in addressing the district's contention that the parent did not present evidence that the student utilized the services during the school year at issue, the IHO noted that in order for the services to be funded, the parent must submit "proof that Student utilize[d] these services" (id. at p. 11). In addition, the IHO found that the parent had properly requested an IEE in her 10-day notice and was entitled to funding for the requested neuropsychological evaluation (id. at p. 12-13).[4]

As relief, the IHO awarded direct payment of: the full cost of the student's tuition at iBrain for the extended 2024-25 school year up to a total of $343,100.60 upon submission of a signed and notarized bill; transportation costs up to a total of $191,111.00 upon submission of a signed and notarized bill encompassing costs owed by the parent, together with an affidavit and invoices documenting the student's use of the service and dates of service; and nursing costs up to a total of $333,608 upon submission of a signed and notarized bill, together with an affidavit and invoices documenting the student's use of the service and dates of service (IHO Decision at pp. 12-13). The IHO also directed the district to fund a neuropsychological evaluation to be conducted by a provider of the parent's choosing at the contracted rate (id. at p. 13).

### IV. Appeal for State-Level Review

The parent appeals, alleging that the IHO erred in failing to award the full terms of either the parent's transportation contract or the nursing contract and requiring documentation of the days

---

[4] Having awarded the parent all of her requested relief for the 2024-25 school year, the IHO noted that the parent's request for pendency services was rendered moot at that time (IHO Decision at p. 13).

on which the student actually used the services. As relief, the parent requests that the undersigned modify the IHO's decision dated September 3, 2024 by awarding full direct payment of the student's transportation and 1:1 nursing services in accordance with the respective contracts signed by the parent with each entity.

In an answer and cross-appeal, the district argues that the IHO incorrectly denied its motion to dismiss because the parent failed to attend the resolution meeting and her attendance was required and the parent otherwise obstructed the collaborative process. The district further asserts that if the IHO's denial of its motion to dismiss is upheld, the petitioner's actions related to the resolution meeting should be weighed as an equitable consideration to reduce the awarded relief by a minimum of fifty percent. In addition, the district claims that any award for transportation services should be denied on equitable grounds as the district sent the parent a letter advising that it was ready, willing, and able to provide the transportation services recommended in the student's IEP.

In a reply and answer to cross-appeal, the parent reiterates her request for a full award of the costs of transportation and nursing services in accordance with the contracts submitted into the hearing record. The parent further argues against the district's allegations related to the resolution meeting. In addition, the parent contends that the district's offer of transportation was not valid as it was made after the start of the 2024-25 extended school year and the offer did not include provision of a 1:1 travel nurse for the student.

**V. Applicable Standards**

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 [2d Cir. 2014]; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" (Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley, 458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). The Supreme Court has indicated that "[t]he IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional advancement" (Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. 386, 399 [2017]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may

cumulatively result in the denial of a FAPE even if the violations considered individually do not" (R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA (M.H., 685 F.3d at 245; A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]).  Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245).

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]).  A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203).  However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" (Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189).  "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created" (Endrew F., 580 U.S. at 404).  The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379).  Additionally, school districts are not required to "maximize" the potential of students with disabilities (Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132).  Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]).  The IEP must be "reasonably calculated to provide some 'meaningful' benefit" (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Endrew F., 580 U.S. at 403 [holding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"]; Rowley, 458 U.S. at 192).  The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc], 200.6[a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance (see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum (see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and

provides for the use of appropriate special education services (see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).[5]

A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-70 [1985]; R.E., 694 F.3d at 184-85; T.P., 554 F.3d at 252).  In Burlington, the Court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (471 U.S. at 370-71; see Gagliardo, 489 F.3d at 111; Cerra, 427 F.3d at 192).  "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance" had it offered the student a FAPE (Burlington, 471 U.S. at 370-71; see 20 U.S.C. § 1412[a][10][C][ii]; 34 CFR 300.148).

The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85).

**VI. Discussion**

    **A. Scope of Review**

Here, the district did not appeal from the IHO's determination that the district failed to meet its burden to demonstrate that it provided the student with a FAPE for the extended 2024-25 school year, that the parent established that the student's unilateral placement at iBrain was appropriate, and that the parent was entitled to an IEE at district expense (see IHO Decision at pp. 6-9).  Accordingly, these findings have become final and binding on the parties and will not be reviewed on appeal (34 CFR 300.514[a]; 8 NYCRR 200.5[j][5][v]; see M.Z. v. New York City Dep't of Educ., 2013 WL 1314992, at *6-*7, *10 [S.D.N.Y. Mar. 21, 2013]).  Having determined that these issues are final and binding, the focus of the appeal centers around the IHO's determinations as to the parties' conduct related to the resolution meeting and whether equitable considerations weigh against all or a portion of the relief awarded by the IHO.

    **B. Resolution Meeting**

The IDEA, as well as State and federal regulations provide that, within 15 days of the receipt of the due process complaint notice, the district shall convene a resolution meeting where the parents discuss their complaint and the school district has an opportunity to resolve that complaint with the parents and the relevant members of the CSE who have specific knowledge of the facts identified in the complaint, including a representative of the school district who has

---

[5] The Supreme Court has stated that even if it is unreasonable to expect a student to attend a regular education setting and achieve on grade level, the educational program set forth in the student's IEP "must be appropriately ambitious in light of his [or her] circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom.  The goals may differ, but every child should have the chance to meet challenging objectives" (Endrew F., 580 U.S. at 402).

9

decision-making authority, but not including an attorney of the school district unless the parents are accompanied by an attorney (20 U.S.C. § 1415[f][1][B][i]; 34 CFR 300.510[a]; 8 NYCRR 200.5[j][2][i]).  The resolution period provision allots 30 days from the receipt of the due process complaint notice for the district to resolve the complaint to the parent's satisfaction or the parties may proceed to an impartial hearing (20 U.S.C. § 1415[f][1][B][ii]; 34 CFR 300.510[b][1]; 8 NYCRR 200.5[j][2][v]).  Except where the parties have agreed to waive the resolution process or use mediation, a parent's failure to participate in a resolution meeting "will delay the timeline for the resolution process," as well as the timeline for the impartial hearing, until the meeting is held (34 CFR 300.510[b][3]; 8 NYCRR 200.5[j][2][vi]).  Further, a school district may request that an IHO dismiss a due process complaint notice if, at the conclusion of the 30-day resolution period and notwithstanding reasonable efforts having been made and documented, the district was unable to obtain the participation of the parent in the resolution meeting (34 CFR 300.510[b][4]; 8 NYCRR 200.5[j][2][vi][a]).  On the other hand, if the district fails to convene the resolution meeting within 15 days of receipt of the parent's due process complaint notice or fails to participate in the resolution meeting, the parent may seek the intervention of the IHO to begin the impartial hearing timeline (34 CFR 300.510[b][5]; 8 NYCRR 200.5[j][2][vi][b]).  If a parent does not feel that their concerns have been adequately addressed at the resolution meeting, the parent is free to proceed with the due process proceedings and seek what they feel will adequately remedy them (see Polanco v. Porter, 2023 WL 2242764 at *5 [S.D.N.Y. Feb. 27, 2023] [noting that the resolution period is a time where the district may remedy any alleged deficiencies in the IEP without penalty, but if the parent feels their concerns have not been adequately addressed, and a FAPE has still not been provided, then the parent may continue with the due process proceeding and seek reimbursement]).

As for the district's motion to dismiss, as a general matter, summary disposition procedures akin to those used in judicial proceedings are a permissible mechanism for resolving certain proceedings under the IDEA (see, e.g., Application of a Student with a Disability, Appeal No. 19-102; Application of the Dep't of Educ., Appeal No. 11-004),[6] but generally regulations do not address the particulars of motion practice.[7]  Instead, unless specifically prohibited by regulation, IHOs are provided with broad discretion, subject to administrative and judicial review procedures, in such matters, so long as they "accord each party a meaningful opportunity" to exercise their rights during the impartial hearing (Letter to Anonymous, 23 IDELR 1073 [OSEP 1995]; see Impartial Due Process Hearing, 71 Fed. Reg. 46,704 [Aug. 14, 2006] [indicating that IHOs should be granted discretion to conduct hearings in accordance with standard legal practice, so long as they do not interfere with a party's right to a timely due process hearing]).

---

[6] While permissible, summary disposition procedures should be used with caution and they are only appropriate in instances in which "the parties have had a meaningful opportunity to present evidence and the non-moving party is unable to identify any genuine issue of material fact" (J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 69 [2d Cir. 2000]).

[7] The exception is a sufficiency challenge, which addresses a complaint on its face and whether the complaint lacks the elements required by the IDEA (8 NYCRR 200.5[i]; see 20 U.S.C. § 1415[b][7], [c][2]; 34 CFR 300.508); however, there is no allegation in the present matter regarding the sufficient of the parent's due process complaint notice.

There is no dispute that a resolution meeting was held on July 23, 2024 (Dist. Ex. 15 at p. 1). The CSE chairperson and the district social worker attended the meeting on behalf of the district (id.). Two attorneys attended on behalf of the parent and advised that they were authorized to represent the parent and make decisions on behalf of the parent for the student (id.). In support of its motion to dismiss, the district argued that the parent's presence was required (IHO Ex. III). In opposition to the district's motion, the parent argued that the district did not schedule the resolution meeting within 15 days from the filing of the due process complaint notice and did not include what the parent believed were necessary district participants ( IHO Ex. IV).

As set forth in 8 NYCRR 200.5[j][2][vi][a], the remedy for a school district that is unable to obtain the participation of a parent at a resolution meeting after it makes and documents its reasonable efforts to do so is to request that the IHO dismiss the parent's due process complaint notice (see 8 NYCRR 200.5[j][2][vi][a]). It is then within the IHO's discretion to determine whether the motion to dismiss should be granted.

Generally, unless specifically prohibited by regulation, IHOs are provided with broad discretion, subject to administrative and judicial review procedures, in how they conduct an impartial hearing, so long as they "accord each party a meaningful opportunity" to exercise their rights during the impartial hearing (Letter to Anonymous, 23 IDELR 1073 [OSEP 1995]; see Impartial Due Process Hearing, 71 Fed. Reg. 46,704 [Aug. 14, 2006] [indicating that IHOs should be granted discretion to conduct hearings in accordance with standard legal practice, so long as they do not interfere with a party's right to a timely due process hearing]). At the same time, the IHO is expected to ensure that the impartial hearing operates as an effective method for resolving disputes between the parents and district (Letter to Anonymous, 23 IDELR 1073).

In this instance, the district is correct in noting that the parent is required to attend a resolution meeting as the district may request that an IHO dismiss a proceeding if the district "is unable to obtain the participation of the parent in the resolution meeting after reasonable efforts have been made" and "[t]he purpose of the meeting is for the parent of the child to discuss the due process complaint, and the facts that form the basis of the due process complaint, so that the [district] has the opportunity to resolve the dispute that is the basis for the due process complaint" (34 CFR 500.10[a][3], [b][4]). However, it is also worth noting that federal regulation specifically provides that "the failure of the parent filing a due process complaint to participate in the resolution meeting will delay the timelines for the resolution process and due process hearing until the meeting is held" (34 CFR 500.10[pb][3]), and, at this point, the hearing has been held. Accordingly, the parent's failure to appear for the resolution meeting has already resulted in a delay in the hearing process. Although it may have been permissible for the IHO to have dismissed the parent's due process complaint notice after the conclusion of the resolution period, which would have required the parent to refile her due process complaint notice and begin the timelines again, at this juncture, such an action would be counterproductive to the efficiency of the administrative process. Accordingly, the district's cross-appeal must be dismissed and the IHO's exercise of his discretion in allowing the proceeding to move forward must be upheld.

### C. Equitable Considerations

The parent objects to the IHO's order directing the parent to produce documentation regarding the use of nursing and transportation services prior to having those services paid for by

11

the district and requests that, instead, the district be directed to pay the amounts as set forth in the contracts.  The district seeks a reduction or denial of funding based on what the district describes as "unreasonable" actions that resulted in the parent not attending the resolution meeting.  The district also requests a denial of funding for transportation services as the district sent the parent a letter advising her that it was "ready, willing and able" to provide transportation services to the student, at no cost to the parent.

The final criterion for a reimbursement award is that the parents' claim must be supported by equitable considerations.  Equitable considerations are relevant to fashioning relief under the IDEA (Burlington, 471 U.S. at 374; R.E., 694 F.3d at 185, 194; M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68 [2d Cir. 2000]; see Carter, 510 U.S. at 16 ["Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required.  Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable"]; L.K. v. New York City Dep't of Educ., 674 Fed. App'x 100, 101 [2d Cir. Jan. 19, 2017]).  With respect to equitable considerations, the IDEA also provides that reimbursement may be reduced or denied when parents fail to raise the appropriateness of an IEP in a timely manner, fail to make their child available for evaluation by the district, or upon a finding of unreasonableness with respect to the actions taken by the parents (20 U.S.C. § 1412[a][10][C][iii]; 34 CFR 300.148[d]; E.M. v. New York City Dep't of Educ., 758 F.3d 442, 461 [2d Cir. 2014] [identifying factors relevant to equitable considerations, including whether the withdrawal of the student from public school was justified, whether the parent provided adequate notice, whether the amount of the private school tuition was reasonable, possible scholarships or other financial aid from the private school, and any fraud or collusion on the part of the parent or private school]; C.L., 744 F.3d at 840 [noting that "[i]mportant to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA"]).

Reimbursement may be reduced or denied if parents do not provide notice of the unilateral placement either at the most recent CSE meeting prior to their removal of the student from public school, or by written notice ten business days before such removal, "that they were rejecting the placement proposed by the public agency to provide a [FAPE] to their child, including stating their concerns and their intent to enroll their child in a private school at public expense" (20 U.S.C. § 1412[a][10][C][iii][I]; see 34 CFR 300.148[d][1]).  This statutory provision "serves the important purpose of giving the school system an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a [FAPE] can be provided in the public schools" (Greenland Sch. Dist. v. Amy N., 358 F.3d 150, 160 [1st Cir. 2004]).  Although a reduction in reimbursement is discretionary, courts have upheld the denial of reimbursement in cases where it was shown that parents failed to comply with this statutory provision (Greenland, 358 F.3d at 160; Ms. M. v. Portland Sch. Comm., 360 F.3d 267 [1st Cir. 2004]; Berger v. Medina City Sch. Dist., 348 F.3d 513, 523-24 [6th Cir. 2003]; Rafferty v. Cranston Public Sch. Comm., 315 F.3d 21, 27 [1st Cir. 2002]); see Frank G., 459 F.3d at 376; Voluntown, 226 F.3d at 68).

Additionally, a party's conduct during a due process proceeding may be weighed as a factor when fashioning equitable relief.  If a party has engaged in a pattern or practice that results in unfair manipulation of the due process procedures, there is nothing that precludes the IHO from considering such facts when weighing equitable factors at the conclusion of the impartial hearing,

12

so long as they are based on an adequate record and after providing the parties a reasonable opportunity to be heard (see Application of a Student with a Disability, Appeal No. 24-333). Here, as noted above, the parent's actions in failing to appear for a resolution meeting could have resulted in a dismissal of the due process complaint notice. However, as the hearing was already delayed by the parent's failure to participate and the hearing has been completed without any issues, I do not find that the parent unfairly manipulated the due process procedures to the extent that a reduction under equitable considerations in warranted.

With respect to the district's assertion that the parent was required to contain costs by utilizing district transportation, the hearing record does not support this contention. As argued by the parent, the district's offered transportation services did not include a 1:1 nurse during transit (see Dist. Exs. 3 at p. 49; 14). However, the parent's contract with B&H Health Care included the provision of 1:1 nursing services during the student's transportation (Parent Ex. A-G at p. 1). Additionally, contrary to the district's assertions, the record includes evidence that the student required nursing services during transportation (Dist Ex 12 at pp. 6-7, 10). Additionally, the iBrain deputy director testified by affidavit that the student required the services of the transportation nurse (Parent Ex. C at ¶ 19).

Finally, turning to the IHO's awarded relief, it was not unreasonable for the IHO to require the parent to submit evidence of the actual use of the 1:1 nursing and transportation services as set forth in the contract. It is worth noting that the IHO did not award payment based only on service dates for which the services were used, but simply directed that the parent must submit invoices documenting the use of the services including delivery dates. Such an award is consistent with the contracts that the parent entered into and merely requires that the parent submit evidence showing that the nursing services and transportation providers performed under the contracts, by showing that services were delivered pursuant to those contracts, prior to having the district make payments. Therefore, I uphold the IHO's determination in this regard.

## VII. Conclusion

Having determined that the IHO was justified in finding that the parties' actions during the resolution meeting did not warrant either dismissal of the parent's due process complaint notice or a reduction of the funding awarded under equitable considerations and having determined that equitable considerations weigh in favor of granting the parent's requested relief, the necessary inquiry is at an end.

I have considered the parties' remaining contentions and find it is unnecessary to address them in light of my determinations above.

**THE APPEAL IS DISMISSED.**

**THE CROSS-APPEAL IS DISMISSED**.


Dated:     Albany, New York
           December 18, 2024                              _____
                                                          STEVEN KROLAK
                                                          STATE REVIEW OFFICER