UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————X

MAYLENE OTERO, as Parent and Natural
Guardian of K.R.O., and MAYLENE OTERO,
Individually *et al.*,

                  Plaintiffs,

-against-

MELISSA AVILÉS-RAMOS, in her official
capacity as Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

                  Defendants.

———————————————————X

1:25-cv-02773-PAE


# PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF A PRELIMINARY INJUNCTION

Kenneth Willard
Liberty and Freedom Legal Group, Ltd.
*Attorneys for the Plaintiff(s)*
105 East 34th Street, Suite #190
New York, New York 10016
hearings@pabilaw.org

## **TABLE OF CONTENTS**

*Page(s)*

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL BACKGROUND .................................................................................................... 5

ARGUMENT ........................................................................................................................ 8

    I.   PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION
        ESTABLISHING K.R.O.'S PENDENCY AT iBRAIN FOR THE 2024-2025
        SCHOOL YEAR ....................................................................................................... 8

    II.  PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION UNDER
        THE TRADITIONAL REQUIREMENTS ............................................................. 15

CONCLUSION ....................................................................................................................21

**Table of Authorities**

**Cases**

*A.D. ex-rel. L.D. v. Hawaii Dep't of Educ.,*
  727 F.3d 911 (9th Cir. 2013) ................................................................................ 20

*Abrams v. Carranza, No. 20-CV-5085*
  (JPO), 2020 U.S. Dist. LEXIS 189292 (S.D.N.Y. Oct. 13, 2020) ........................... 18

*Agudath Israel of Am. v. Cuomo,*
  983 F.3d 620 (2d Cir. 2020) ................................................................................. 21

*Araujo v. N.Y.C. Dep't of Educ.,*
  2021 U.S. Dist. LEXIS 64038 (S.D.N.Y. Apr. 1, 2021) .................................... 9, 19

*Araujo v. N.Y.C. Dep't of Educ.,*
  2023 U.S. Dist. LEXIS 139223 (S.D.N.Y. Aug. 9, 2023) ...................................... 13

*Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.,*
  560 F. Supp. 701 (W.D.N.Y. 1983) ....................................................................... 16

*C.F. ex rel. R.F. v. New York City Dep't of Educ.,*
  746 F.3d 68 (2d Cir. 2014) ..................................................................................... 6

*Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302,*
  400 F.3d 508 (7th Cir. 2005) .................................................................................. 7

*Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.,*
  175 F. Supp. 2d 375 (N.D.N.Y. 2001) .................................................................. 17

*Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.,*
  689 F. Supp. 197, 202 (S.D.N.Y. 1988) .................................................................. 2

*Doe v. E. Lyme Bd. of Educ.,*
  790 F.3d 440 (2d Cir. 2015) ......................................................................... 1, 7, 8

*Drinker by Drinker v. Colonial Sch. Dist.,*
  78 F.3d 859 (3d Cir. 1996) .................................................................................... 20

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1,*
  580 U.S. 386 (2017) ............................................................................................ 5, 6

*H.W v. Comal Indep. Sch. Dist.,*
  2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 (W.D. Tex. April 21, 2021) ............... 10, 11, 12

*J.L. v. N.Y.C. Dep't of Educ.,*
  2024 U.S. Dist. LEXIS 215095 (S.D.N.Y. Nov. 25, 2024) ....................................... 9

*Joshua A. v. Rocklin Unified Sch. Dist.*,
  559 F.3d 1036 (9th Cir. 2009) ........................................................................................ 20

*M.R. v. Ridley Sch. Dist.*,
  744 F.3d 112 (3d Cir. 2014) ............................................................................................ 7

*Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*,
  86 F. Supp. 2d 354 (S.D.N.Y. 2000) ............................................................................ 10

*N.J. v. New York*,
  872 F. Supp. 2d 204 (E.D.N.Y. 2011) .......................................................................... 18

*Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*,
  No. 1:21-CV-00711 (MKV), 2021 WL 1164571 (S.D.N.Y. Mar. 26, 2021) ................. 16, 17, 21

*Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*,
  No. 90-CV-4, 1990 WL 36803 (N.D.N.Y. Mar. 30, 1990) .......................................... 16

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*,
  96 F.3d 78 (3d Cir. 1996) ........................................................................................... 7, 20

*T.K. v. New York City Dep't of Educ.*,
  810 F.3d 869 (2d Cir. 2016) ......................................................................................... 5, 6

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
  752 F.3d 145 (2d Cir. 2014) ......................................................................................... 6, 18

*Tucker Anthony Realty Corp. v. Schlesinger*,
  888 F.2d 969 (2d Cir. 1989) ......................................................................................... 15

*Olson v. Robbinsdale Area Sch.*,
  No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004) ................. 16, 21

*Ventura de Paulino v. New York City Dep't of Educ.*,
  959 F.3d 519 (2d Cir. 2020) ........................................................................ 1, 7, 8, 15

*Zvi D. by Shirley D. v. Ambach*,
  694 F.2d 904 (2d Cir. 1982) ........................................................................ 1, 8, 18

**Statutes**

20 U.S.C. § 1415 ...............................................1, 2, 3, 4, 6, 8, 10, 11, 12, 13, 14, 15, 18, 19, 21

N.Y. Educ. Law § 4404 ................................................................................................... 2

**Other**

34 C.F.R. § 300.514 ....................................................................................................... 10

34 C.F.R. § 300.516 ....................................................................................................... 10

34 C.F.R. § 300.518 ........................................................................................................................... 2

Fed. R. Civ. P. 65 .............................................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this Memorandum of Law in support of her Motion for a Preliminary Injunction under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j) (the "stay-put" or pendency provision) and Fed. R. Civ. P. 65(a). Plaintiff seeks an order compelling Defendants, MELISSA AVILES-RAMOS, in her official capacity as Chancellor of the New York City Department of Education, and the New York City Department of Education (collectively, "DOE"), to fully and immediately implement the pendency placement of K.R.O. ("Student") at her current educational program, iBRAIN, including tuition, special transportation, and nursing services.

Under the IDEA's pendency provision, funding for a disabled student's current educational placement is an automatic entitlement triggered by the filing of a due process complaint. 20 U.S.C. § 1415(j); *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). Courts have repeatedly recognized that the stay-put provision operates as an "automatic preliminary injunction," maintaining the student's educational status quo until litigation is resolved. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).

Here, Plaintiff's pendency rights were unambiguously established by the unappealed State Review Officer ("SRO") Decision 24-444, which affirmed the IHO Decision 277052, establishing that the DOE had denied Student a free and appropriate public education under the IDEA, that iBRAIN was an appropriate placement, and that the equities did not warrant a reduction in recovery. [ECF No. 1-3]. During the pendency of a due process proceeding, federal and state law mandate that the student must remain in his then-current educational placement, unless the parent

and DOE agree otherwise. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a); N.Y. Educ. Law § 4404(4)(a) (McKinney). Courts recognize that pendency serves a critical function in ensuring educational continuity for students with disabilities, preventing unilateral disruptions in placement.

The DOE has failed to fully fund Student's pendency program as required by law, resulting in delays, financial hardship, and potential disruption to Student's education. The DOE's disregard for the SRO's binding pendency determination constitutes a clear violation of the IDEA and warrants immediate injunctive relief.

Because pendency is an automatic entitlement under the IDEA, Plaintiff need not satisfy the traditional preliminary injunction standard. *See Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988)(holding that pendency injunctions are not subject to traditional preliminary injunction factors). However, even under the traditional standard, Plaintiff can readily establish: (1) irreparable harm due to the DOE's failure to honor the Pendency Order, (2) a clear likelihood of success on the merits, and (3) that the balance of hardships and public interest weigh decisively in favor of enforcement of the K.R.O.'s statutory rights.

For the foregoing reasons, Plaintiff seeks an order compelling DOE's full and immediate compliance with its pendency funding obligations, ensuring the uninterrupted provision of tuition, related services, transportation, and nursing services at iBRAIN, consistent with the SRO Decision 24-444 and 20 U.S.C. § 1415(j).

## STATEMENT OF FACTS

Plaintiff is the parent and natural guardian of K.R.O.  K.R.O. suffers from a brain injury that has resulted in severe impairments to cognition, language, memory, attention reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychosocial

behavior, physical functions, information processing and speech.  ECF No. 1-2, at 4.  She has received diagnoses of hydrocephalus and cerebral palsy and suffers from a number of other issues including global developmental delays, sialorrhea, hypoglycemia, and osteopenia, as well as enduring the placement of both gastrostomy and jejunostomy tubes [ECF No. 1-4, at 3; ECF No. 1-1, at 4].

K.RO. is non-verbal and "require[es] a high degree of individualized attention throughout the school day." [ECF No. 1-2, at 4.  She is also non-ambulatory and requires a full-time 1:1 nurse to manage her complex medical  needs, including G-tube feedings, and a 1:1 paraprofessional to assist with all classroom activities, related services, and activities of daily living [*Id.* at 4]. Given the intensity of her needs, K.R.O. requires an individualized, structured educational program in a small, highly supportive classroom environment, along with an extended school day and extended school year ("ESY") to prevent regression. [*Id.*].

On July 2, 2024, Plaintiff filed a Due Process Complaint ("DPC") seeking to maintain K.R.O.'s placement at iBRAIN, including related services, special transportation, and 1:1 nursing [ECF No. 1-2, at 3].  This DPC was assigned Case No. 277052.  [ECF No. 1, ⁋ 67].  Plaintiff asserted that the New York City Department of Education ("DOE") failed to offer or provide K.R.O. a Free Appropriate Public Education ("FAPE") for the 2024–2025 ESY. [ECF No. 1-2, at 2, 5]. The DPC alleged that the DOE failed to, *inter alia*: provide a Procedural Safeguards Notice; provide a School Location Letter; conduct an evaluation or reevaluation (at least every 3 years); provide Parents with information on how to request an Independent Educational Evaluation at public expense. [ECF No. 1-2, pp. 5].

On September 3, 2024, IHO Jamie Kotchek ("IHO Kotchek") issued a Findings of Fact and Decision ("FOFD") denying Defendants' Motion to Dismiss [ECF No. 1-3, at 6].  IHO Kotchek

found that the DOE had denied K.R.O. a FAPE , that Plaintiff's unilateral placement of K.R.O. at

iBRAIN was appropriate, and that the equities did not warrant a reduction in recovery [ECF No.

7-11].  IHO Kotchek issued the following Order:

1.  "The District shall pay directly to Private School, tuition, up to a total of $343,100.60, within 30 days of submission of a signed, notarized bill encompassing tuition costs owed by the Parent … for the extended 2024-2025 school year;"

2.  "The District shall pay directly to the Transportation Company, up to a total of $191,111.00, within 30 days of submission of a signed, notarized bill encompassing costs owed by the Parent … for the Student's use of transportation service to and from Private School for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service;"

3.  "The District shall pay directly to the Nurse Company, up to a total of $333,608, within 30 days of submission of a signed, notarized bill encompassing costs owed by the Parent … for the Student's full-time nurse during transportation to and from Private School for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service;" and

4.  "The District shall fund an Independent Neuropsychological Evaluation … ."

[ECF No. 1-3, at 14].

On October 15, 2024, Plaintiff filed a Request for Review ("RFR") requesting the SRO to

award nursing and transportation expenses as per the terms of the relevant contracts, and to affirm

IHO Kotchek's decision in all other respects [ECF No. 1-4, at 7-8].  The DOE cross-appealed,

arguing that the IHO erred in finding that the district failed to provide a FAPE, that K.R.O.'s

unilateral placement at iBRAIN was appropriate, and that the equities did not warrant a reduction

in reimbursement.  [*Id.* at 8].  In SRO Decision 24-444, SRO Steven Krolak ("SRO Krolak")

denied both appeals and preserved IHO Kotchek's original order finding that the DOE denied

K.R.O. a FAPE, that iBRAIN was an appropriate unilateral placement, and that Plaintiff should

be awarded the costs of reimbursement up to the amounts set forth in the relevant contracts,

subject to the required evidentiary showings [*Id.* at 11, 14].  There has been no appeal of SRO

Decision 24-444 [ECF No. 1, ¶ 82].

On December 23, 2024, pursuant to IHO Kotchek's Order, Plaintiff submitted the following documents to the DOE: the DPC, iBRAIN Tuition Affidavit, iBRAIN Attendance, Sister's Travel and Transportation Affidavit, Sister's Travel and Transportation Invoice, B&H Healthcare Service, Inc. Affidavit, B&H Healthcare Service, Inc. Invoice, and the FOFD and SRO Decision [ECF No. 1, ¶ 83].

Despite the IHO's Order and the unappealed SRO Decision 24-444 affirming same, and despite the fact that Plaintiff has fully complied with the IHO Order in providing the required documentation, DOE has failed to fully fund K.R.O.'s tuition, transportation and nursing expenses for the 2024-25 ESY, resulting in significant delays in funding and financial hardship for the Plaintiffs.

## LEGAL BACKGROUND

Congress enacted the IDEA 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F.*, 526 U.S. 66, 68 (1999)). Children are entitled to "an education 'likely to produce progress, not regression,' and one that 'afford[s] the student with an opportunity greater than mere trivial advancement.'" *T.K. v. New York City Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) (quoting *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015)); accord *Endrew*

*Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386 (2017)("a student offered an educational program providing 'merely more than *de minimis* progress from year to year can hardly be said to have been offered an education at all'").

"The 'centerpiece' of the IDEA and its principal mechanism for achieving this goal is the

5

IEP," *i.e.*, Individualized Education Program. *T.K.*, 810 F.3d at 875. "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child. *Endrew F. ex rel. Joseph F.*, 580 U.S. 386 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 181 (1982)). "Where the IEP is substantively deficient, parents may unilaterally reject it in favor of sending their child to private school and seek tuition reimbursement from the State." *T.K.*, 810 F.3d at 875. To challenge an IEP, a parent must first file a "due process complaint" detailing the alleged deficiencies of the IEP. *C.F. ex rel.*

C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014)(citing 20 U.S.C. § 1415(b)(7)(A), (f)(1)). Following a 30-day resolution period, the parent and school district will participate in an "impartial due process hearing" before an IHO. *Id.* Under New York law, once the IHO renders a decision, any party aggrieved by the decision may request a review by a state review officer ("SRO"), who can affirm or modify the IHO's Order. *Id.* (citing N.Y. Educ. Law § 4404(1)-(2)). After that, "[e]ither party may bring a civil action before a federal or state court to review the SRO's decision." 20 U.S.C. § 1415(i)(2)(A)).

During the pendency of the aforementioned judicial proceedings, the IDEA's "pendency provision" also known as the "stay put provision," codified at 20 U.S.C. § 1415(j), "entitles a disabled child to 'remain in his then-current educational placement." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014)(quoting 20 U.S.C. § 1415(j)). The core concern of the IDEA is to provide a continuous, uninterrupted education to disabled children; accordingly, the pendency provision "maintain[s] the educational status quo" of the child and ensures continuity of services while the parties' dispute is being resolved. See *id*. (citing *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160–61 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004)). "There

is no separate requirement that a court determines the placement is appropriate; rather, the obligation arises automatically from a determination that the private school is the protected status quo during the period in which the dispute resolution process is ongoing." *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 123–24 (3d Cir. 2014)(quotation omitted). "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy. *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005)(citing *Honig v. Doe*, 484 U.S. 305, 326–27 (1988); *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 318 F.3d 545, 556 (3d Cir. 2003)).

Although the IDEA does not specify which party pays when a child's pendency placement is at a private school, "the school district's obligation to do so is well established by case law." *M.R.*, 744 F.3d at 118–19 (quotation omitted); *see also Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 87 (3d Cir. 1996)("[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). The IDEA's pendency provision "therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe*, 790 F.3d at 452.

Determining a child's pendency placement requires the Court to identify the student's "then current educational placement." *Ventura de Paulino*, 959 F.3d at 532. This term can mean either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015). "The placement can [] be changed if an impartial hearing officer or

state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision." *Ventura de Paulino*, 959 F.3d at 532.

## ARGUMENT

I. **PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ESTABLISHING K.R.O.'S PENDENCY AT iBRAIN FOR THE 2024-2025 SCHOOL YEAR**

Here, the "stay-put" provision of the IDEA acts as an automatic preliminary injunction. The IDEA's "stay put" provision in 20 U.S.C. § 1415(j) provides that: [e]xcept as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents agree otherwise, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed. 20 U.S.C. § 1415(j). "[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process." *Mackey ex rel. Thomas M.*, 386 F.3d at 160–61 (quotation omitted). The "stay put" provision "is, in effect, an automatic preliminary injunction." *Zvi D. by Shirley D.*, 694 F.2d at 906. "[I]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested the due process hearing." *Id.*

Under the IDEA, a child's pendency placement is established by looking to either 1) the placement described in the student's most recently implemented IEP, 2) the operative placement actually functioning at the time when the due process proceeding was commenced, or 3) the placement at the time of the previously implemented IEP. *Doe*, 790 F.3d at 452. "A student's then-current placement can be changed only by one of four ways: (1) an agreement of the parties, (2)

an unappealed hearing officer or court decision, (3) an SRO decision that agrees with the child's parents, or (4) determination by a court on appeal from an SRO's decision*."  J.L. v. N.Y.C. Dep't of Educ.*, 2024 U.S. Dist. LEXIS 215095, at *4 (S.D.N.Y. Nov. 25, 2024)(citing 34 C.F.R. § 300.514(c); *Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 697 (S.D.N.Y. 2006)).

It is well-established that an unappealed administrative decision by either an IHO or SRO constitutes an agreement on the placement of the disabled child as a matter of law.  *See Araujo v. N.Y.C. Dep't of Educ.*, 2021 U.S. Dist. LEXIS 64038, at *5-6 (S.D.N.Y. Apr. 1, 2021)(finding that unappealed IHO decision established an agreement on placement at iBRAIN)(citing *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002)("holding that an unappealed IHO decision regarding pendency establishes such placement as a matter of law")(as interpreted by *Araujo*)).

Here, IHO Kotchek ordered Defendants to pay Plaintiff $343,100.60 in tuition reimbursements, $191,111.00 in transportation costs, and $333,608 in nursing costs for the 2024-25 ESY, subject to proof of the use of the services in the form of affidavits, invoices and notarized bills, as appropriate.  *See* ECF No. 1-3, at 14.  SRO Krolak affirmed this decision by denying both parties' appeals on December 18, 2024.  *See* ECF No. 1-4, at 11, 14.

On December 23, 2024, Plaintiff submitted the following documents pursuant to IHO Kotchek's Order: the DPC, iBRAIN Tuition Affidavit, iBRAIN Attendance, Sister's Travel and Transportation Affidavit, Sister's Travel and Transportation Invoice, B&H Healthcare Service, Inc. Affidavit, B&H Healthcare Service, Inc. Invoice, and the FOFD and SRO Decision.  ECF No. 1, ⁋ 83.  Having complied with IHO Kotchek's Order, it was incumbent upon Defendants to make payment within 30 days.  *See* ECF No. 1-3, at 14.  That deadline – January 22, 2025 – came and went without any additional payment from the DOE.  *See* ECF No. 1, ⁋⁋ 84, 85.

Under New York regulations, Defendants have four months to appeal SRO Krolak's decision. *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 356 (S.D.N.Y. 2000)("Both Plaintiffs and the District have four months from the date of the SRO decision, that is until April 14, 2000, within which to bring an appeal.")(citing *Adler v. Education Dept. of New York*, 760 F.2d 454 (2nd Cir. 1985)). The deadline for an appeal of SRO Krolak's decision is therefore April 18, 2025. As of the date of this writing, the DOE's right to appeal to SRO Krolak's decision is still very much alive.

In order for pendency to be established under 20 U.S.C. § 1415(j), there does not have to be an appeal, whether judicial or administrative, actively pending, so long as the time for appeal has not yet expired. This was made persuasively clear in *H.W v. Comal Indep. Sch. Dist.*, 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 (W.D. Tex. April 21, 2021). In the course of examining the definition of the "child's then current placement" under 20 U.S.C. § 1415(j), the court came to some very sensible conclusions that this Court should follow. The court reasoned,

> While one may argue that neither type of proceeding is pending during the period between the administrative and judicial proceedings, such as we have in this case, the statute as a whole does not support that interpretation. Further, the statute and applicable regulations recognize that the administrative process is final but subject to appeal, see 34 C.F.R. § 300.514; 20 U.S.C. § 1415(g) and (i)(2), and that an aggrieved party has ninety days to bring a civil action, see 34 C.F.R. § 300.516; 20 U.S.C. § 1415(i)(2).

*H.W*, 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *7-8.

The court rejected the argument that the child could be placed elsewhere at the whim of the school because there had been no agreement between the district and the parents regarding the placement of the child that would have overridden any dispute, a fundamental protection written into the IDEA. *See H.W*, 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *7-8. The court reasoned,

> By providing a right to appeal and to proceed with a civil action, Congress clearly

intended to eliminate the finality of any administrative decision until resolution of any appeal or civil action pursued under 20 U.S.C. § 1415. Properly interpreted, "pendency of any proceedings conducted pursuant to [§ 1415]," as used in § 1415(j), encompasses the entirety of the administrative and judicial process. The administrative process remains pending during the time for appeal. Therefore, in general, unless there is an agreement consistent with § 1415(j), the child shall remain in the educational placement that existed when the stay-put provision was first invoked.

2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *8.

Importantly, the court noted, "Nor has Plaintiff stated any sort of agreement **not** to appeal the administrative decision, which could be construed as an agreement to permit the placement change. To the contrary, according to Plaintiff, her attorney immediately informed defense counsel that Plaintiff was appealing the administrative decision." *H.W*, 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *8. Nor did the parents agree to lift the stay-put order. 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *8-9.

So it is here. As of the date of the submission of this brief with the Court, the DOE has not yet filed an appeal, but still has until April 18, 2025 to do so. Moreover, Plaintiff does not allege in her Complaint, and nowhere will Defendants be able to show, that there has been an agreement regarding placement of K.R.O. since SRO Kroleck issued Decision 24-444 on December 18, 2024. And like *H.W.*, the parents have not agreed to lift the stay-put order. To the contrary, they are actively seeking to enforce their pendency rights under the IDEA. "Therefore, in general, unless there is an agreement consistent with § 1415(j), the child shall remain in the educational placement that existed when the stay-put provision was first invoked." *H.W*, 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *8.

As *H.W* recognized, this conclusion is consistent with the purposes of the IDEA. "By providing a right to appeal and to proceed with a civil action, Congress clearly intended to eliminate the finality of any administrative decision until resolution of any appeal or civil action

pursued under 20 U.S.C. § 1415." 2021 U.S. Dist. LEXIS 76247, 2021 WL 1566453 at *8. "Properly interpreted, 'pendency of any proceedings conducted pursuant to [§ 1415],' as used in § 1415(j), encompasses the entirety of the administrative and judicial process." *Id.* at *8. Therefore, pendency remains active "during the time *for* an appeal." *Id.* (emphasis added).

Even if this Court were to reject the reasoning in *H.W*, the DOE's practices make it clear that the DOE has no intention of abandoning its claims and will in all likelihood file suit with this very Court to sustain its objection to SRO Decision 245-444 and keep this dispute very much alive. In cases such as these, the DOE's recent practice has been to wait to the last minute to file an appeal, thus extending the time that would otherwise be required to pay tuition, transportation and/or nursing costs due to unfavorable administrative-level decisions. In this way, the DOE "games the system" by taking advantage of the appeals process built into the IDEA and associated New York State regulations to avoid the inevitable distribution that would be required under 20 U.S.C. § 1415(j).

This case is no less an example of that practice. Despite the fact that no appeal has been taken, assuming *arguendo* that the reasoning in *H.W.* is not persuasive and therefore nominally putting an end to Plaintiff's pendency placement under § 1415(j), the DOE will almost certainly seek to overturn SRO Krolak's decision by filing suit in federal court, based on the DOE's past practice. That keeps this dispute very much alive. The DOE's past practice creates a *de facto* dispute that establishes pendency under 20 U.S.C. § 1415(j) even though a dispute is not currently pending.

iBRAIN was established as the last agreed upon placement of K.R.O. based on the unappealed FOFD by IHO Helene Peyser ("IHO Peyser") on November 30, 2021. *See* ECF No. 1, ¶¶ 44, 45. Therefore, even though a dispute is not currently pending, the DOE will likely file

one in the near future, before the impending deadline, making this case a live dispute until the deadline to file an appeal has passed.

*Araujo v. N.Y.C. Dep't of Educ.*, 2023 U.S. Dist. LEXIS 139223 (S.D.N.Y. Aug. 9, 2023) is not to the contrary.  The plaintiff argued that pendency under 20 U.S.C. § 1415(j) was still operative even though there was a final and binding FOFD that had not been appealed.  *See Araujo*, 2023 U.S. Dist. LEXIS 139223 at *15-16.  The court rejected the basic premise.  *Id.* at *15.  The court reasoned, "Plaintiffs' argument that W.R.'s pendency placement has not changed, and is still iBRAIN, is correct but irrelevant. The FOFD did find W.R.'s placement at iBRAIN to be appropriate. W.R.'s continued placement at iBRAIN means only that, if Ramos initiates IDEA proceedings in the future, W.R. may be able to remain at iBRAIN during the pendency of those new proceedings." *Id.* at *16 (citing 20 U.S.C. § 1415(j)).  Importantly, however, time for appeal had already expired and the court was merely contemplating the filing of another DPC for a new year.  *See Araujo*, 2023 U.S. Dist. LEXIS 139223 at *6, 16 ("Ramos did not appeal the FOFD's finding that the transportation costs previously funded under pendency are unreasonable, so Ramos cannot challenge that finding now," while noting elsewhere in the decision that a final unappealed FOFD had been issued on May 15, 2022).  *Araujo* merely stands for the proposition that an unappealed FOFD, constituting a decision on the merits of the preferred placement of the child, and otherwise considered a pendency-setting event for future DPCs, is not usurped by prior substantive administrative-level decisions.

In sum, Plaintiff brings this action to enforce IHO Peyser's FOFD under Consolidated No. 205442 as it applies to Plaintiff's DPC for 2024–2025 ESY. [ECF No. 1-2; ECF No. 1-4]. While the appeals process for the 2024-25 ESY has yet to play out, K.R.O. has been attending school at iBRAIN since before IHO Peyser issued her Decision establishing iBRAIN as the proper

placement for the 2020-21 ESY under Case No. 210850.  ECF No. 1, ¶¶ 44, 45.  IHO Kotchek found that the DOE had denied K.R.O. a FAPE , that Plaintiff's unilateral placement of K.R.O. at iBRAIN was appropriate, and that the equities did not warrant a reduction in recovery [ECF No. 7-11].  Pursuant to the clear mandate of 20 U.S.C. § 1415(j), this placement at iBRAIN is the basis of K.R.O.'s pendency program/placement throughout the administrative and judicial proceedings relative to IHO Case No. 277052, retroactive to July 2, 2024 when the DPC for the 2024-25 ESY was first filed.

The FOFD ordered direct payment of up to $343,100.60 to iBRAIN for tuition, up to $191,111.00 to Transportation Company for transportation, up to $333,608.00 to the Nurse Company for nursing and the funding of an Independent Neuropsychological Evaluation at the contracted rate, subject to the provision of certain proofs.  ECF No. 1-3, at 14; *see also* ECF No. 1, ¶ 75.  Plaintiff, on December 23, 2024, provided those proofs in accordance with IHO Kotchek's FOFD.  *Id.* at ¶ 83.  To date, only $85,775.16 in tuition reimbursements have been made by the DOE towards K.R.O.'s pendency placement/program.  *See* Declaration of Arthur Mielnik ("Mielnik Decl."), ¶ 8.  This leaves a significant shortfall of $257,325.44 in tuition reimbursements for the 2024-25 ESY.  *See* Mielnik Decl., ¶ 9.  Moreover, the DOE has failed to pay any money at all toward transportation costs and nursing expenses for the 2024-25 ESY, resulting in a shortfall, respectively, of $191,111.00 and $333,608.00.  *Id.* at ¶ 12.  **In total, the DOE has failed to pay a staggering $782,044.44 for the 2024-25 ESY in tuition reimbursements, transportation costs and nursing services.**  *Id.* at ¶ 13.

It is crucial to note that the end of the school year is approaching, the DOE has been under an obligation to pay since December 18, 2024, approaching four months, and only a small fraction of the total amount owed has been paid. In contravention of IHO Kotchek's FOFD, DOE has failed

to fund K.R.O's pendency program/placement in violation of 20 U.S.C. § 1415(j).

Plaintiff is undeniably entitled to pendency placement at iBRAIN with tuition reimbursement, transportation costs, and nursing services because that was the last agreed upon placement at the time she filed her DPC.  Accordingly, Plaintiffs is entitled to a pendency order under 20 U.S.C. § 1415(j)'s "automatic injunction" standard and is entitled to a preliminary injunction ordering the DOE to implement and fully fund K.R.O.'s placement at iBRAIN during the pendency of K.R.O.'s 2024-2025 IEP dispute.

## II.    PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION UNDER THE TRADITIONAL REQUIREMENTS

Although well-established law does not require Plaintiffs to meet the traditional requirements for a preliminary injunction, Plaintiffs have done so in this case. "Ordinarily, to obtain a preliminary injunction, the movant must "show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Ventura de Paulino*, 959 F.3d at 529 (citing *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). "[T]he enforcement of the pendency provision is automatic and should occur without regard to such factors as irreparable harm likelihood of success on the merits and balancing of the hardships." *Abrams v. Carranza*, No. 19-CV-4175 (AJN), 2019 WL 2385561, at *1 (S.D.N.Y. June 6, 2019). DOE's failure to implement the IHO's Pendency Order to fully fund O.F.'s program/placement at iBRAIN continues to deny their rights to FAPE under the IDEA and requires the entry of a preliminary injunction to enforce the IHO's order.

To establish irreparable harm, a plaintiff must demonstrate an injury neither remote nor speculative, but actual and imminent. *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969,

975 (2d Cir. 1989). Where a school district has refused to implement a final administrative order or decision, such as a hearing officer's decision, courts have found irreparable harm. *Kantak v. Bd. of Educ., Liverpool Cent. Sch. Dist.*, No. 90-CV-4, 1990 WL 36803, at *2 (N.D.N.Y. Mar. 30, 1990); *Blazejewski By & Through Blazejewski v. Bd. of Educ. of Allegany Cent. Sch. Dist.*, 560 F. Supp. 701, 705 (W.D.N.Y. 1983). In such circumstances, a plaintiff's injury is actual and imminent because the plaintiff is deprived of the FAPE to which they are entitled under IDEA. *Olson v. Robbinsdale Area Sch.*, No. CIV.04-2707 RHK/AJB, 2004 WL 1212081 (D. Minn. May 28, 2004). "Interrupt[ing] a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury." *N.J. v. New York*, 872 F. Supp. 2d 204, 214 (E.D.N.Y. 2011). The law clearly states that denying a placement to which a student is entitled constitutes irreparable harm. *Y.S. on behalf of Y.F. v. New York City Dep't of Educ.*, No. 1:21-CV-00711 (MKV), 2021 WL 1164571, at *9–11 (S.D.N.Y. Mar. 26, 2021)(citing *Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001)("[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm.")).

Based on the foregoing, failing to fund a special education program to which a student is entitled also constitutes irreparable harm. DOE's failure to fund K.R.O's pendency placement puts K.R.O. in imminent danger of being denied the specialized educational program and nursing services ordered by the IHO if tuition, transportation and nursing services are not paid. This is undeniably true in K.R.O.'s case given the significant shortfalls in tuition, transportation and nursing services. Of the $343,100.60 owed in tuition reimbursements under IHO Kotchek's FOFD, the DOE has paid only $85,776.16 to date. *Compare* ECF No. 1, ⁋ 75 *with* Mielnik Decl.,

¶ 8. And of the $191,111.00 and $333,608.00 owed in transportation costs and nursing services, respectively, the DOE has paid nothing. *Compare* ECF No. 1, ¶ 75 *with* Mielnik Decl., ¶¶ 11, 12. In total, that leaves the ***staggering sum of $782,044.44*** that has yet to be paid for K.R.O.'s pendency placement at iBRAIN for the 2024-25 ESY. *See Id.* at ¶ 13.

It is truly vexing to think that anyone could believe that a special education school like iBRAIN, which is responsible for myriad number of severely disabled students, provide them with appropriate equipment and staffing to meet their closely-watched and monitored needs, would be able to survive very long without close to one million dollars in funding for a single student. The idea is patently ridiculous. *See N.J.*, 872 F. Supp. 2d at 214 ("Interrupt[ing] a child's schooling causing a hiatus not only in the student's education but also in other social and psychological developmental processes that take place during the child's schooling, raises a strong possibility of irreparable injury."); *see also Cosgrove*, 175 F. Supp. 2d at 392 ("[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm.").

Moreover, as the Mielnik Declaration irrefutably establishes, the denial of pendency payments to K.R.O. for the 2024-25 ESY is part of an overall pattern of obstructive conduct where the DOE has made its intentions clear never to fully fund the pendency placements of iBRAIN's students as required under the IDEA. Shortfalls in tuition reimbursements for the 2024-25 ESY at iBRAIN alone amount to 3.7 million dollars. *See* Mielnik Decl., ¶¶ 15, 20. And when shortfalls in transportation and nursing services are considered for that same time period, several million dollars more in lost money is at stake. *Id.* at ¶ 16. It is beyond cavil that these kinds of shortfalls threaten the very existence of iBRAIN and evoke the kinds of existential threats that courts have contemplated when considering the quantum of proof necessary to establish irreparable injury.

*See cf. Abrams v. Carranza*, No. 20-CV-5085 (JPO), 2020 U.S. Dist. LEXIS 189292, at *4-5 (S.D.N.Y. Oct. 13, 2020)(rejecting a preliminary injunction under § 1415(j) on the basis of disputed payment amounts where "such disputes do not implicate irreparable harm, at least where, as here, there is no imminent threat to the educational services themselves.")(citing *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 916-18 (2d Cir. 1986)("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.")).

The amounts involved here, in the millions of dollars, clearly establish such an imminent threat.  But even considered alone,  the DOE's failure to pay close a million dollars for K.R.O.'s pendency placement at iBRAIN for the 2024-25 has the same effect – an existential threat to the school's continued, safe operation.

Accordingly, DOE's failure to fund K.R.O.'s tuition, transportation, and nursing services for the 2024–2025 and earlier school years threatens the IDEA's stay-put provision under 20 U.S.C. § 1415(j), which ensures that a child remains in their current educational placement throughout legal proceedings. Courts have held that placement necessarily includes funding, as withholding tuition payments would force a change in placement, violating the statute. *Zvi D. by Shirley D.*, 694 F.2d at 906. In *T.M. ex-rel. A.M.*, 752 F.3d at 152, the court reaffirmed that the stay-put provision prohibits school districts from disrupting a student's education by withholding funding. The consequences of DOE's failure could be severe: Plaintiffs remain financially responsible for tuition and related services, despite a binding administrative order confirming DOE's obligation to fund these costs. Such non-compliance puts the K.R.O.'s continued education at risk in contravention of the IDEA.

Moreover, a preliminary injunction is needed because the DOE's recalcitrant conduct in

clawing back payments previously made to iBRAIN show the DOE's proclivity of openly flouting its pendency placement obligations under 20 U.S.C. § 1415(j). Without such an order, it is clear that the DOE will fail to live up to its obligations every single time. Specifically in this case, after making three separate tuition reimbursement payments on October 5, 2024, totaling $85,775.16, the DOE scheduled a fourth and final payment of $257,325.44, constituting the final remaining balance for tuition for the 2024-25 ESY. *See* Mielnik Decl., ₱₱ 8-9. The DOE scheduled that payment and entered it into the DOE's Payee Information Portal (PIP) on or about October 14, 2024, only to cancel that payment several days later on October 16, 2024, just prior to its scheduled release. *See Id.* at ₱ 9-10. The remaining balance has never been paid. *Id.* at ₱ 11.

These kinds of shenanigans demonstrate that the DOE will never voluntarily fully honor its pendency payment obligations under the IDEA, and instead must be affirmatively compelled to do so. *See* Mielnik Decl., ₱ 20 (detailing 28 different instances of tuition reimbursement shortfalls for 28 different students, totaling over 3.7 million dollars). This constitutes a separate basis for establishing irreparable harm. But in tandem with all of the shortfalls established in the Mielnik Declaration, both collectively with regard to the twenty-eight students enumerated, and individually with regard to the facts of K.R.O., irreparable harm is established. *See Id.* at ₱₱ 8-13, 20.

As an alternative to irreparable harm, Plaintiff can also easily establish a likelihood of success on the merits. It is undeniably the case that Plaintiff would prevail on the merits here because, as the above discussion makes abundantly clear, the unappealed FOFD in Consolidated IHO No. 205772 establishes the last agreed-upon placement at iBRAIN for the 2024-25 ESY as a matter of law. *See Araujo*, 2021 U.S. Dist. LEXIS 64038 at *5-6 (finding that unappealed IHO decision established an agreement on placement at iBRAIN)(citing *Bd. of Educ. of Pawling Cent.*

*Sch. Dist.*, 290 F.3d at 484).

Having therefore established pendency placement at iBRAIN, Plaintiff has also established her entitlement under the IDEA to have K.R.O. remain at iBRAIN during the pendency of these proceedings, and relevant caselaw establishes that the DOE is, in fact, the one responsible for funding that placement, effectively acting as a backstop against what would otherwise be nothing more than a right written on a piece of paper without the proper funding to make it a reality. *See Susquenita School Dist.*, 96 F.3d at 87 ("[w]ithout interim financial support, a parent's 'choice' to have his child remain in what the state has determined to be an appropriate private-school placement amounts to no choice at all."). Therefore, regardless of Plaintiff's ability to establish irreparable harm, Plaintiffs have clearly established a likelihood of success on the merits under the more traditional test for a preliminary injunction.

As to the second prong of that test, whether there are sufficiently serious questions going to the merits, the IDEA's "stay-put" provision inherently acknowledges that the overarching importance of the pendency placement during the due process determination is of significant importance in its own right and is independent of the outcome of the administrative proceedings. It is well-established that "the stay-put provision is designed to ensure educational stability for children with disabilities until the dispute over their placement is resolved, '*regardless of whether their case is meritorious or not*.'" *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996)(quoting *Woods*, 20 Indiv. Disabilities Educ. L. Rep. at 440)(emphasis added); *see also A.D. ex-rel. L.D. v. Hawaii Dep't of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013)(stating that "a student who requests an administrative due process hearing is entitled to remain in his educational placement regardless of the strength of his case or the likelihood he will be harmed by a change in placement"); *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009)("[T]he

stay-put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process."). Accordingly, the balance of hardships tips decidedly toward Plaintiffs in determining the enforcement of an IHO's Pendency Order.

Finally, requiring the DOE to follow IDEA is in the public interest. When a preliminary injunction is sought to "affect government action taken in the public interest under a statute or regulatory scheme," the court asks whether the injunction is in the public interest rather than balancing the equities. *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020); *Y.S. on behalf of Y.F.*, 2021 WL 1164571, at *3. When Congress creates a special enforcement system, as with IDEA, the public interest is on the side of maintaining that system's integrity. *Olson*, 2004 WL 1212081. The IDEA's integrity is maintained by ensuring that all parties adhere to administrative orders. Allowing DOE to be delinquent in its legal obligations, particularly considering the long delays it has built into the administration of the underlying due process hearings, which DOE controls, erodes the integrity of the administrative process and the purpose of IDEA. public learns that DOE can simply wait out the delays it creates, forcing parents, who rarely have sufficient resources to maintain their disabled children in unilateral educational placements, to give up trying to procure funding for appropriate educational services.

Granting the preliminary injunction is appropriate and necessary to ensure the timely enforcement of the Plaintiffs' and K.R.O.'s statutory rights and IDEA's integrity.

## **CONCLUSION**

Based on the foregoing, the Plaintiff's requests that this Court issue a preliminary injunction declaring that K.R.O..'s pendency placement/program under 20 U.S.C. § 1415(j) of the IDEA during the pendency of all administrative and judicial proceedings relative to K.R.O.'s Due Process Complaint ("DPC") for the 2024–2025 school year is at iBRAIN and includes

K.R.O.'s related services, transportation, and nursing, with direct funding tuition to iBRAIN and/or the appropriate service provider.

Dated:  April 4, 2025
      New York, New York

                       Respectfully submitted,
                       Liberty & Freedom Legal Group
                       *Attorneys for Plaintiffs*

By:      ***/S/ Kenneth Willard***
                       Kenneth Willard
                       105 East 34th Street, Suite #190
                       New York, New York 10016
                       (646)850-5035
                       ken@pabilaw.org