UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAYLENE OTERO, *individually and on behalf of K.R.O.*,

                           Plaintiff,

-v-

MELISSA AVILES-RAMOS *et al.*,

                          Defendants.

25 Civ. 2773 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiff Maylene Otero, parent of K.R.O., a 17-year-old girl with severe neurological and physical disabilities, filed this action against the New York City Department of Education and its Chancellor, Melissa Aviles-Ramos (together, the "Department"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* In earlier state administrative proceedings, Otero obtained an order requiring the Department to fund K.R.O's placement at a specialized private school, the International Institute for the Brain ("iBrain"), for the 2024–2025 extended school year, provided that Otero submits documentation of K.R.O.'s attendance at iBrain and her use of transportation and nursing services (the "related services"), for which she also sought funding.[1]

In this action, she alleges that the Department has made some but not all payments required by the administrative order. After Otero sued, the Department paid the full amount of K.R.O.'s iBrain tuition for 2024–2025. *See* Dkt. 13 ("Kapoor Decl.") ¶ 6. As such, only funding for related services remains outstanding.

---

[1] Under the IDEA, "related services" are "the support services required to assist a child to benefit from" educational instruction tailored to the unique needs of a child with a disability. *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390–91 (2017) (cleaned up).

Otero now moves for a preliminary injunction under the so-called "stay-put" provision of the IDEA, 20 U.S.C. § 1415(j). Dkt. 6 (the "Application"). Her Application seeks a court order directing the Department (1) to "fully and immediately" pay for related services that K.R.O. is alleged to have received, and (2) to do so without requiring proof that K.R.O. used those services. The Department responds, principally, that Otero has not made the showing required by the Second Circuit's decision in *Mendez v. Banks*, 65 F.4th 56 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024), for the extraordinary relief of immediate payment.

For that reason and those that follow, the Court denies the Application.

## I. Background

### A. Statutory Framework

The IDEA offers federal funds to States in exchange for a commitment to provide a free appropriate public education ("FAPE") to all children with disabilities. 20 U.S.C. § 1412(a)(1)(A); *see also Endrew*, 580 U.S. at 399. A FAPE should "emphasize[] special education and related services designed to meet the unique needs" of a child with a disability and "prepare" the child "for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

To accomplish that purpose, the local educational agency must develop an individualized education program ("IEP") for each child that "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Honig v. Doe*, 484 U.S. 305, 311 (1988); *see* 20 U.S.C. § 1414(d)(1)(A).[2]

---

[2] "Local educational agency" means "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a

2

The IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 580 U.S. at 399. It must be calculated to provide an "appropriate education, not one that provides everything that might be thought desirable by loving parents." *Navarro Carrillo v. N.Y.C. Dep't of Educ.*, No. 21-2639, 2023 WL 3162127, at *3 (2d Cir. May 1, 2023) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 127 (2d Cir. 1998)).

When a parent believes that the State has failed to offer her child a FAPE, the parent may file a due process complaint and attend a hearing before an Impartial Hearing Officer ("IHO"). 20 U.S.C. § 1415(b)(6); N.Y. Educ. Law § 4404(1). Such a complaint initiates an "administrative challenge unrelated to the concept of constitutional due process." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). If the parent's concerns are not resolved at a "[p]reliminary meeting," 20 U.S.C. § 1415(f)(1)(B)(i), the matter proceeds to a hearing before the IHO, *id.* § 1415(f)(1)(A); *see also id.* § 1415(f)(3)(A)(i), who must "determin[e] . . . whether the child received a [FAPE]," *id.* § 1415(f)(3)(E)(i); *see also* N.Y. Educ. Law § 4404(1)(a). The IHO's decision is appealable by either party to a State Review Officer ("SRO"), who must "conduct an impartial review" of the IHO's "findings and decision." 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2). "Any party aggrieved by" the SRO's decision "ha[s] the right" to seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A); *see also* N.Y. Educ. Law § 4404(3)(a).

While a parent's concerns are being litigated, her child is entitled to "remain in the then-current educational placement" at public expense "until all such proceedings have been

---

service function for, public elementary schools or secondary schools in a city . . . ." 20 U.S.C. § 1401(19)(A).

3

completed." 20 U.S.C. § 1415(j). This provision—the stay-put provision—"seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). The Second Circuit "has characterized § 1415(j) as 'in effect, an automatic preliminary injunction,' given that it 'substitutes an absolute rule in favor of the status quo'—that is, the maintenance of a student's then-current educational placement—for the standard preliminary injunction analysis involving irreparable harm, the likelihood of success on the merits, and the balance of hardships." *Mendez*, 65 F.4th at 62 (quoting *Zvi D. ex rel. Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982)). To the extent, however, that a parent's requests go beyond maintenance of her child's then-current educational placement—for instance, in seeking immediate reimbursement of pendency tuition—the traditional preliminary injunction factors come back into play, as the stay-put provision "does not create an entitlement to immediate payment." *Id.* at 63–64.

**B.    Facts**

    **1.    K.R.O.'s Background[3]**

K.R.O. has neurological and physical disabilities, including hydrocephalus and cerebral palsy. *See* Dkt. 1-2 at 4. She is non-verbal and non-ambulatory and thus requires one-to-one assistance to participate in classroom activity and to attend to her basic needs. Dkt. 1-3 at 3–4. She also requires a modified environment in order to minimize "extraneous auditory and visual stimulation." Dkt. 1-2 at 4.

---

[3] Otero's Complaint, Dkt. 1, is devoid of facts particular to K.R.O., the child whose interests are ostensibly implicated by these proceedings. As such, the Court draws the following facts from the exhibits appended to the parties' submissions. For exhibits and briefs with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers.

### 2.     Administrative Proceedings[4]

On July 2, 2024, Otero filed a due process complaint ("DPC") with the Department. Compl. ¶ 66. It alleged that the Department had failed to furnish a FAPE to K.R.O. for the 2024–2025 extended school year. *Id.* It sought an order requiring the Department to fund K.R.O's tuition at iBrain and related services, namely transportation and one-to-one nursing services. *Id.* The DPC also sought funding for K.R.O.'s placement at iBrain during the pendency of the due process proceedings, pursuant to 20 U.S.C. § 1415(j). *Id.* ¶ 69. The case was assigned to IHO Jaime Kotchek. *Id.* ¶ 74.

On September 3, 2024, IHO Kotchek issued her findings of fact and decision ("FOFD"). Dkt. 1-3. IHO Kotchek held that the Department had denied K.R.O. a FAPE, that her placement at iBrain was appropriate, and that equitable considerations did not warrant a reduction in recovery. *See id.* at 6–12; *see also E.M. v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 451–55 (2d Cir. 2014) (setting out governing framework). Her FOFD directed the Department to pay (1) KRO's iBrain tuition ($343,100) and (2) fees for transportation ($191,111) and nursing services (up to a total of $333,608), upon Otero's submission of proof that K.R.O. had in fact used those services.

---

[4] The facts in this Section are drawn from the Complaint, Dkt. 1, and the administrative record, Dkts. 1-3, 1-4.

FOFD at 14. It required the Department to make those payments within 30 days of Otero's submission of the required documentation.[5] *Id.*

Both parties appealed to SRO Steven Krolak. Dkt. 1-4 ("SRO Decision"). Salient here, Otero appealed the IHO's decision insofar as it required her to furnish documentation that K.R.O. actually used transportation and nursing services (and of the days on which she did so) to obtain funding from the Department for those services. *Id.* at 7–8. Otero urged the SRO to instead award the full fees for the services *as contracted* with the service providers, that is, without requiring documentation that K.R.O. used the services. *Id.* The Department, for its part, cross-appealed the IHO's decision requiring it to fund K.R.O.'s placement at iBrain, on grounds not relevant here. *See id.* at 8.

On December 18, 2024, SRO Krolak dismissed both parties' appeals. *Id.* at 2. As to Otero's appeal, he held that "it was not unreasonable for the IHO to require the parent to submit evidence of the actual use of the 1:1 nursing and transportation services as set forth in the

---

[5] The FOFD required the following documentation:

- For tuition, "a signed, notarized bill encompassing tuition costs owed by the Parent to the Private School";

- For transportation fees, "a signed, notarized bill encompassing costs owed by the Parent to the Transportation Company for the Student's use of transportation service to and from Private School for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service"; and

- For the nursing fees, "a signed, notarized bill encompassing costs owed by the Parent to the Nurse Company for the Student's individual, full-time nurse during transportation to and from Private School, and Student's attendance at Private School, for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service."

FOFD at 14.

contract. . . . [This] merely requires that the parent submit evidence showing that the nursing services and transportation providers performed under the contracts, by showing that services were delivered pursuant to those contracts, prior to having the district make payments." *Id.* at 14. The SRO's decision thus affirmed (1) the Department's obligation to fund K.R.O.'s educational placement at iBrain for the 2024–2025 extended school year; and (2) the documentation requirements that the FOFD had set, which Otero had to meet *before* the Department's payment obligation arose. *Id.* at 14.

Neither party has appealed the SRO's decision. Their deadline to do so has long passed. *See* Dkt. 11 ("Dep't Br.") at 4; Dkt. 15 ("Otero Reply") at 4.

### C.    Procedural History

On April 3, 2025, Otero filed the Complaint, seeking, among other relief, an order requiring the Department to fund K.R.O.'s transportation and nursing services without Otero's having to provide the documentation required by the FOFD. Dkt. 1.

On April 4, 2025, Otero moved for a preliminary injunction, Dkt. 6, and filed a declaration by an iBrain employee in support, Dkt. 6-1 ("Mielnik Decl."). On April 8, 2025, the Court issued an order to show cause, requiring Otero promptly to serve the Department, and ordering the Department to respond to Otero's motion within 14 days. Dkt. 9. On April 23, 2025, the Department filed an opposition, Dkt. 11, and supporting declarations, Dkts. 12 ("Vyas Decl."), 13. On May 2, 2025, Otero filed a reply. Dkt. 15 ("Otero Reply").

## II.     Discussion

It is undisputed that the SRO's decision is operative today,[6] and that that decision requires the Department to fund K.R.O.'s educational placement at iBrain for the 2024–2025 extended school year. Dep't Br. at 12; Otero Reply Br. at 2. Indeed, the Department has already paid the full amount of K.R.O.'s iBrain tuition. Kapoor Decl. ¶ 6. Also undisputed is that the SRO's decision requires the Department to pay for related services only after Otero submits documentation substantiating K.R.O.'s use of those services. Thus, the sole question presented by Otero's Application is whether the stay-put provision, 20 U.S.C. § 1415(j), requires the Department to *immediately* make those payments without holding Otero to that documentation requirement.

It does not. For the following reasons, Otero has not shown she is entitled to preliminary injunctive relief under either basis she advances: (1) the stay-put provision and (2) the traditional preliminary injunction standard.

---

[6] Where, as here, "an impartial hearing officer or state review officer finds the parents' new placement to be appropriate by adjudicating the IEP dispute in the parents' favor, and the school district chooses not to appeal the decision," the Department "consent[s], by operation of law, to [the student's] private placement" in her new school. *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 532 (2d Cir. 2020); *see also Bd. of Educ. v. Schutz*, 290 F.3d 476, 484 (2d Cir. 2002) ("[O]nce the parents' challenge [to a proposed IEP] succeeds . . . , consent to the private placement is implied by law, and the requirements of § 1415(j) become the responsibility of the school district."). "At that moment, the City assume[d] the legal responsibility to pay for [iBrain's] educational services to [K.R.O.] as the agreed-upon educational program that must be provided and funded during the pendency of any IEP dispute." *Ventura de Paulino*, 959 F.3d at 532. Thus, the IHO held the issue of pendency moot because Otero was "awarded [her] entire request." FOFD at 13–14; *see* SRO Decision at 6 n.4; *cf., e.g., Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (issue is moot when "the parties lack a legally cognizable interest in the outcome"); *Pulphus v. Ayers*, 909 F.3d 1148, 1152 (D.C. Cir. 2018) (mootness, as with standing, "applies independently to each form of relief sought, and subsists through all stages of federal judicial proceedings"). Even assuming *arguendo* that pendency were not moot, Otero did not challenge the IHO's pendency determination before the SRO, so she failed to preserve the issue.

8

### A.      "Automatic Entitlement" to Immediate Payment

Centrally, Otero is wrong that the Application "need not satisfy the traditional preliminary injunction standard" because "pendency is an automatic entitlement" under § 1415(j). Application at 7. That argument is foreclosed by the Second Circuit's decision in *Mendez, supra*. There, a group of parents of children enrolled at iBrain argued that § 1415(j) "entitled [them] to an automatic injunction directing the DOE to fund their children's pendency placements." 65 F.4th at 59 (cleaned up). The Circuit emphatically rejected their argument. *Id.* at 63. It held that "the IDEA's stay-put provision does not create an entitlement to immediate payment or reimbursement." *Id.* Such relief is available only if a child's parents can "establish that a delay or failure to pay has jeopardized their child's educational placement." *Id.* Absent that showing, the Circuit explained, the "IDEA does not compel the state to accelerate its disbursement of funds," *id.* at 59, nor is the state "obliged to circumvent its ordinary payment procedures," *id.* at 63. Because the plaintiffs had "sprinted to federal court" without any evidence that their children's educational placements were in jeopardy, the Court held, they were not entitled to preliminary injunctive relief under § 1415(j), or for that matter, under the traditional preliminary injunction standard. *Id.* at 59–60.

The same is true here. Otero does not offer *any* evidence that the Department's withholding of payment pending her submission of proof "has jeopardized [K.R.O.'s] educational placement." *Id.* at 63. Otero does not argue that the Department is contesting its obligation to fund K.R.O.'s educational placement at iBrain under the FOFD—nor could she plausibly so claim. As noted, the Department has already paid K.R.O.'s iBrain tuition for 2024–2025. *See* Kapoor Decl. ¶ 6 ("[The Department] has processed a total of $343,100.60 in tuition costs, which constitutes the total amount owed for K.R.O.'s tuition. [It] processed the

9

final payment of $257,325.44 and Plaintiffs received the amount via electronic funds transfer on 4/18/2025."). And it has unequivocally acknowledged its obligation to fund related services under the SRO's decision:

> If Plaintiff submits to the DOE the appropriate documentation—as ordered by the underlying administrative orders—demonstrating K.R.O.'s actual use of the transport and nursing services to the DOE, the *DOE will process invoices and make payments in its ordinary course of business*.

Dep't Br. at 10 (emphasis added). Unsurprising in light of the Department's concessions before this Court, Otero does not even claim, much less muster evidence, that K.R.O. is at risk of losing her placement at iBrain. Therefore, Otero is clearly not eligible for "immediate payment" relief under *Mendez*. *See Moonsammy v. Banks*, No. 24 Civ. 2616 (PAE), 2024 WL 2831042, at *7 (S.D.N.Y. June 3, 2024) (holding, where parents did not adduce evidence that child's educational placement was in jeopardy, "that the Department need only pay the Moonsammys via its ordinary payment procedures" (citation omitted)); *Grullon v. Banks*, No. 23 Civ. 5797, 2023 WL 6929542, at *5 (S.D.N.Y. Oct. 19, 2023) (denying application for immediate payment where "Plaintiffs have made no showing that [child] [wa]s in danger of losing their placement at iBrain" (capitalization altered)); *Ramos v. Banks*, No. 24 Civ. 5109, 2025 WL 1455703, at *8 (S.D.N.Y. May 21, 2025) (same where plaintiff failed to substantiate threat of "imminent disenrollment").

Under these circumstances, the Department is not "obliged to circumvent its ordinary payment procedures" as to funding for K.R.O.'s related services. *Mendez*, 65 F.4th at 63. The Circuit has recognized that the Department may require documentation of educational expenses before disbursing funds under the IDEA, because such is within the State's prerogative to exercise budgetary oversight. It explained in *Mendez*:

10

> If each pendency order entitled parents or guardians to immediate payment, school districts would be unable to implement basic budgetary oversight measures, such as requiring receipts before reimbursement. And nothing in the statutory text or the legislative history of the IDEA . . . implies a legislative intent to permit parents or guardians to utilize the stay-put provision's automatic injunctive procedure to frustrate the fiscal policies of participating states.

*Id.* So, too, here. The Department has attested that the reason it has not disbursed funds for related services is that Otero has not furnished the documentation required by the SRO's decision. *See* Kapoor Decl. ¶ 7 ("On 4/8/2025, [the Department] reached out to Plaintiff's counsel requesting th[e] documentation [required by the SRO's decision], but the documentation has not been provided. Accordingly, no payments for transportation have been made."); *id.* ¶ 8 (same as to payment for nursing services). It is entitled to do so under the terms of the SRO's decision: That decision, mirroring the FOFD, conditioned the Department's funding obligation on Otero's submission of documentation supporting that K.R.O. actually used the transportation and nursing services for which she seeks funding. The lack of documentation to date, the Department rightly argues, invites concern "whether there was any fraud or collusion in generating (or inflating) the [fees] to be charged to the Department," *E.M.*, 758 F.3d at 461, and prevents it from "smok[ing] out excessive charges by the . . . service provider," *Moonsammy*, 2024 WL 4277521, at *11; *see also* Dep't Br. at 13 ("At its core, Plaintiff's present rush to commence federal litigation . . . is yet another improper attempt to expedite DOE's disbursements of funding for the iBrain school and the contracted transportation and nursing services while circumventing the obligation to provide documentation proving the Student's use of transport and nursing services." (capitalization altered)). The case law recognizes the State's valid interest in guarding against the risk of "artificially inflated" payment requests stemming from "sham transactions" in which parents and service providers "tacitly underst[and] that, should funding from the public school district not be granted, the parent will be relieved from

11

payment." *Mr. & Mrs. A. ex rel. D.A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 429–30 (S.D.N.Y. 2011) (citation omitted); *E.M*, 758 F.3d at 461 (similar); *Moonsammy*, 2024 WL 4277521, at *11 (similar); *A.R. ex rel F.P. v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 4493, 2013 WL 5312537, 8–11(S.D.N.Y. Sept. 23, 2013); *see also Davis v. Banks*, No. 22 Civ. 8184, 2023 WL 5917659, at *5 (S.D.N.Y. Sept. 11, 2023) (emphasizing "legitimate concerns about waste, fraud, and abuse" as to funding for related services at iBrain). Otero, at bottom, seeks funding for services purportedly provided to K.R.O. based on nothing more than her say-so. The Department is entitled to insist upon proof.

Courts in this District have routinely rejected attempts to jump the payment queue without making the required showing under *Mendez*. *See Moonsammy*, 2024 WL 2831042, at *7 (Department was "clearly correct" that parents were not entitled to immediate payment where there was no threat of imminent disenrollment); *Ramos*, 2025 WL 1455703, at *5 (denying application for "fast-tracked, immediate payment" where it "d[id] not identify any actual or imminent threat or indicate that [child] will lose access to education at iBrain and relevant services" (capitalization altered)); *Thomas v. Banks*, 24 Civ. 5138, Dkt. 67 (Jan. 17, 2025) (same); *Grullon*, 2023 WL 6929542, at *5 (plaintiff seeking immediate payment "misstate[d] the nature and function of the so-called automatic injunction under Section 1415(j)"); *see also Ramos*, 2025 WL 1455703, at *5 (rejecting claim of unreasonable delay given "practical realities of thousands of funding requests under the IDEA that DOE receives" (cleaned up)); *Mendez*, 65 F.4th at 63 (similar).

Thus, Otero is not entitled to immediate payment for related services under the stay-put provision.

12

### B. Traditional Preliminary Injunction Standard

Otero also fails to establish that she is entitled to immediate payment under the traditional preliminary injunction standard. Under it, the applicant must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because a preliminary injunction is an "extraordinary" equitable remedy that is "never awarded as of right," an applicant for a preliminary injunction must make "a clear showing." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024).

Relevant here, irreparable harm "'is the single most important prerequisite' for injunctive relief, and '[i]n the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.'" *Uppal v. New York State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). To show irreparable harm, "plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 672 (2d Cir. 2023) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam) (cleaned up)); *see also Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (on motion for preliminary injunction, "the function of the court is not to take whatever steps are necessary to prevent irreparable harm, but primarily to keep things as they were, until the court is able to determine the parties' respective legal rights" (citation omitted)), *cert. denied sub nom. Gray v. Jennings*, 145 S. Ct. 1049 (2025).

The Application does not establish irreparable harm—or come close. As the Court has reviewed, Otero has not put forward any evidence that K.R.O. is at risk of losing her placement at iBrain due to the Department's alleged delay (justified or not) in making payment. *Compare supra* at pp. 7–8, *with JTH Tax*, 62 F.4th at 673 ("plaintiff must present the district court with actual evidence" that she "will suffer . . . an actual and imminent" injury). Otero's claim of irreparable harm, instead, rests solely on iBrain's contention that *it* faces "ongoing financial risk" due to the Department's alleged "systematic pattern of delays" in making payments. Mielnik Decl. ¶ 14. But iBrain is not a party to this litigation, nor was it to the underlying state administrative proceedings. Its asserted financial issues do not support irreparable harm *to Otero* (or K.R.O., on whose behalf she sued). Nor does the declaration submitted by Arthur Mielnik, an iBrain employee, tie the "financial risk" faced by iBrain to any imminent threat to K.R.O.'s ability to attend iBrain. *See* Mielnik Decl. *passim*. And Mielnik's declaration does not explain why the Department's alleged delay in payment for related services harms iBrain, as opposed to the ostensible third-party providers of those services. *See* FOFD at 14 ("The District shall pay directly to *the Nurse Company* . . . ." (emphasis added)); *id.* ("The District shall pay directly to *the Transportation Company* . . . ." (emphasis added)).

The Department, in any event, has attested that it stands ready to disburse funding for related services upon Otero's submission of the documentation required by the SRO's decision. *See* Kapoor Decl. ¶¶ 7–8; *see also* Dep't Br. at 10. Thus, Otero's claim of potential financial injury to iBrain does not remotely support the irreparable harm required for preliminary injunctive relief. *See McKinney*, 602 U.S. at 345–46; *see also, e.g., Grand River*, 481 F.3d at 66 (claimed injury cannot be "remote" or "speculative").

14

Courts have held preliminary relief improper where, as here, there was no substantiated risk to the student's ability to remain in her educational placement. *See, e.g., Abrams v. Carranza*, No. 20 Civ. 5085, 2020 WL 6048785, at *2 (S.D.N.Y. Oct. 13, 2020) (denying preliminary injunction for lack of irreparable harm where "there [wa]s no threat to the students' placements"), *aff'd sub nom. Abrams v. Porter*, No. 20 Civ. 3899, 2021 WL 5829762 (2d Cir. Dec. 9, 2021); *see also id.* ("While the parties have certain disputes over payment—for example, whether iBrain has provided the information DOE has requested for reimbursement and whether DOE must pay transportation expenses for a period when the students were not using such services—such disputes do not implicate irreparable harm . . . ."); *Ramos*, 2025 WL 1455703, at *7–8 (denying preliminary injunction where plaintiffs' "conclusory statements" of irreparable harm "[we]re undercut by the fact that the [children] . . . continued to attend iBrain" (capitalization altered)); *Mendez*, 65 F.4th at 64 (no irreparable harm where plaintiffs' counsel conceded that "iBrain ha[d] allowed the students to remain in the school" (capitalization altered)).

Accordingly, Otero's bid for preliminary-injunctive relief fails for lack of irreparable harm.

## CONCLUSION

For the foregoing reasons, the Court denies the Application. The Court directs the Department to promptly process K.R.O.'s payments, pursuant to its ordinary payment procedures, upon Otero's submission of the documentation required by the FOFD.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: July 24, 2025
       New York, New York

16