UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAYLENE OTERO, *individually and
on behalf of K.R.O.*,

|                          Plaintiff,

-v-

MELISSA AVILES-RAMOS *et al.*,

|                          Defendants.

---

25 Civ. 2773 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On July 24, 2025, the Court denied plaintiff Maylene Otero's motion for a preliminary injunction under the so-called "stay-put" provision of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(j) ("IDEA"). Dkt. 16 ("Decision"). Otero had sought an order directing the New York City Department of Education and its then-chancellor, Melissa Aviles-Ramos, (together, the "Department") to immediately pay for transportation and nursing services related to her daughter's education, without requiring proof that her daughter actually used those services.

Pending now is Otero's motion for reconsideration of the Decision. For the following reasons, the Court denies the motion.

## I.        Background

The Court assumes familiarity with this case. In brief: Otero's daughter, K.R.O., has neurological and physical disabilities, including hydrocephalus and cerebral palsy. In earlier state administrative proceedings, Otero obtained an order (the "FOFD," *i.e.*, findings of fact and decision) requiring the Department to fund K.R.O.'s placement at a specialized private school,

the International Institute for the Brain ("iBrain"), for the 2024–2025 extended school year, provided that Otero submitted documentation of K.R.O.'s attendance there.  The FOFD also required the Department to fund the transportation and nursing services—up to a total of $333,608—related to K.R.O.'s placement at iBrain that school year (the "related services"), within 30 days of receiving documentation showing that she had used the related services.

Otero then filed this lawsuit and moved for a preliminary injunction, requiring the Department to "fully and immediately" pay for such costs.  After she sued, the Department paid K.R.O.'s tuition in full.  The remaining relief Otero sought was thus an order directing the Department (1) to immediately pay for the related services that K.R.O. was alleged to have received, and (2) to do so without requiring proof that K.R.O. used those services.

The Court denied the application.  It found that Otero had not shown she was entitled to relief under either basis she advanced: (1) the IDEA's stay-put provision, 20 U.S.C. § 1415(j), or (2) the traditional preliminary injunction standard.  As to the first, the Court noted, the Second Circuit had held that the stay-put provision does not create an entitlement to immediate payment unless a child's parent establishes that non-payment jeopardizes the child's educational placement.  Decision at 9 (citing *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024)).  Because Otero had not claimed that her placement was in jeopardy, much less offered any evidence of such, the Court held that Otero was not entitled to immediate payment under the IDEA.  Moreover, the Court held, Otero had not submitted documentation, as required by the FOFD, showing that K.R.O. had "actually used" the transportation and nursing services for which she sought funding.  *Id.* at 11.  The stay-put provision did not entitle Otero to circumvent that requirement without making the showing, under *Mendez*, *supra*, of risk to K.R.O.'s educational placement.  Second, under the traditional preliminary injunction factors,

2

the Court held that Otero had not established irreparable harm—"the single most important prerequisite" for such relief.  *Id.* at 13–14 (quoting *Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) (summary order)).  The Court found that Otero had not shown that K.R.O.'s placement at iBrain was in danger due to the non-payment of funds for related services. And, the Court noted, the Department had attested that it stood ready to disburse such upon Otero's submission of the documentation required by the FOFD.

On August 7, 2025, Otero moved for reconsideration of the Decision.  Dkt. 18 ("Mot."). On August 21, 2025, the Department opposed.  Dkt. 19.  On August 28, 2025, Otero replied. Dkt. 20 ("Reply").

## II.    Governing Legal Standard

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court."  *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001) (citing *Shrader*, 70 F.3d at 257).  Such a motion should not be made "reflexively [to] reargue those issues already considered when a party does not like the way the original motion was resolved." *SEC v. Neto*, 27 F. Supp. 3d 434, 439 (S.D.N.Y. 2014) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011)).

**III.     Discussion**

In urging reconsideration, Otero argues that the Court (1) overlooked certain exhibits attached to her application for injunctive relief, ostensibly showing that she had submitted the documentation, as required by the FOFD, for related services, and (2) erred by not awarding late fees, which she asserts are due under the contracts for the related services.  Both arguments are unpersuasive, and verge on frivolous.

**A.     Documentation for Related Services Submitted by Otero to the Department**

As to Otero's first asserted ground for reconsideration, she states, *inter alia*, that on December 23, 2024, she provided to the Department documents concerning related services for K.R.O.  According to Otero, these were the: (1) "School Transportation Annual Service Agreement"; (2) "Nursing Service Agreement"; (3) "Sister[']s Travel and Transportation [] Affidavit and Invoices"; and (4) "B&H Healthcare Service, Inc. [] Affidavit and Invoice."  Mot. at 7–8.  She argues that the Decision overlooked these documents, which, she says, "fully comported with" the FOFD and thus entitle her to payment by the Department for the related services.  *Id.* at 8.

Otero is wrong.  To receive reimbursement for K.R.O.'s transportation to and from iBrain, the FOFD required Otero provide the Department with

> a signed, notarized bill encompassing costs owed by the Parent to the Transportation Company for the Student's use of transportation service to and from [iBrain] for the extended 2024–2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service.

FOFD at 14.  As to nursing costs, the FOFD required the same documentation, reflecting "the Student's individual, full-time nurse during transportation to and from [iBrain], and Student's attendance" at iBrain.  *Id.*

4

The documents cited by Otero here do not meet these requirements.  The "School Transportation Annual Service Agreement" and "Nursing Service Agreement," Dkt. 15-5, are contracts for future performance by transportation and nursing services, respectively.  Both contracts bear signature dates in June 2024—*before* K.R.O. began the 2024–2025 extended school year on July 2, 2024.  *See* Dkt. 15-5 at 23 (declaration by iBrain's deputy director of related services, attesting that K.R.O. began attending iBrain on July 2, 2024).  These documents do not, and could not, substantiate K.R.O.'s actual use of these services.  The remaining documents Otero cites—affidavits and invoices from "Sister[']s Travel and Transportation" and "B&H Healthcare Service, Inc."—merely reflect that agreements between these entities and Otero were in place.  These are also dated from before (or, with respect to the transportation affidavit and invoice, the first day of) K.R.O.'s 2024–2025 school year.  None of these documents, or any others submitted by Otero, reflect K.R.O.'s actual use of these services or the dates of such usage.[1]  Otero's bid for reconsideration on this ground thus fails.  *See, e.g.*, *Thaler v. United States*, 706 F. Supp. 2d 361, 374 (S.D.N.Y. 2009) ("Where the movant fails to show that any . . . facts have actually been overlooked . . . , the motion for reconsideration must be denied." (citation omitted)); *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (same); *United States v. Kerik*, 615 F. Supp. 2d 256, 276 n.27 (S.D.N.Y. 2009) (same).

---

[1] Otero also argues that the FOFD did not require her to submit documentation reflecting K.R.O.'s actual usage.  *See, e.g.*, Reply at 5 ("Delivered pursuant to the contracts means available every school day—not just on days the student attends [iBrain] in person.").  The Decision rejected this argument, and no intervening changes in law or the facts warrant reconsideration of such.  *See, e.g.*, *De Jesus v. Oyshi Table Corp.*, No. 19 Civ. 830, 2021 WL 1791478, at *2 (S.D.N.Y. May 5, 2021) ("A motion for reconsideration is not [a] means to obtain a second bite at the apple." (citation omitted)).

**B.    Otero's New Claim for Late Fees**

Otero next argues that the IDEA's stay-put provision requires the Department to disburse "late fees" to her, which, she asserts, are traceable to the Department's non-payment for related services.  But Otero's application for injunctive relief did not seek late fees.  Because a "motion for reconsideration is not the appropriate vehicle for raising new . . . issues or arguments not previously presented to the Court," *Torres v. Carry*, 672 F. Supp. 2d 346, 349 (S.D.N.Y. 2009) (citation omitted), Otero cannot seek late fees via this motion.  Moreover, even if she had made such a claim in her initial application, the Court has held that Otero is not entitled to payment by the Department for related services unless and until she provides adequate documentation reflecting K.R.O.'s actual usage of such, as required by the FOFD.  Any late fees for related services would thus be traceable to *Otero's* failure—not untimeliness by the Department—to provide the requisite documentation.  And to the extent Otero makes broader arguments that the Decision erred with respect to her "pendency claims," Mot. at 11–12, these merely "repeat[] old arguments previously rejected," *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).  The Court thus denies her bid for reconsideration.  *See, e.g., Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."); *Sjunde AP-Fonden v. Gen. Elec. Co.*, 722 F. Supp. 3d 347, 351–52 (S.D.N.Y. 2024) (denying reconsideration where movant repeated rejected arguments); *Goonan v. Fed. Rsrv. Bank of N.Y.*, No. 12 Civ. 3859, 2013 WL 1386933, at *2–3 (S.D.N.Y. Apr. 5, 2013) (same).

## CONCLUSION

For the above reasons, the Court denies Otero's motion for reconsideration. The Clerk of the Court is respectfully directed to terminate the motion pending at docket 18.

By separate order, the Court will schedule an initial conference in this case.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 17, 2026
      New York, New York

7