UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAYLENE OTERO, *individually and as parent and natural guardian of K.R.O*,

Plaintiff,

-v-

MELISSA AVILES-RAMOS, *in her official capacity as Chancellor of the New York City Department of Education*, *et al.*,

Defendants.

25 Civ. 2773 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves cross-motions for summary judgment in a case brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. These cross-motions concern a discrete issue—whether plaintiff Maylene Otero (the parent of K.R.O., a child with disabilities) produced records to defendant the New York City Department of Education (the "Department") that adequately show the actual use of transportation and nursing services related to K.R.O.'s 2024–2025 placement at the International Institute for the Brain ("iBrain"). If Otero's documentation met the requirements set by state officials in an earlier administrative proceeding, the Department must pay for those services. Otherwise, the Department is not obligated to do so.

For the following reasons, the Court denies Otero's motion for summary judgment and grants the Department's cross-motion.

## I. Background

### A. K.R.O.

At the beginning of the 2024–2025 extended school year, K.R.O. was age 17. Dkt. 1 ("Compl.") ¶ 27. She has significant neurological and physical disabilities, including hydrocephalus and cerebral palsy. *See* Dkt. 1-2 at 4. She is non-verbal and non-ambulatory, and thus requires one-to-one assistance to participate in classroom activity and to attend to her basic needs. Dkt. 1-3 (the "FOFD") at 3. She requires a modified environment to minimize "extraneous auditory and visual stimulation." Dkt. 1-2 at 4.

### B. Administrative Proceedings

On July 2, 2024, Otero filed a due process complaint ("DPC") with the Department. Compl. ¶ 66. It alleged that the Department had not provided a free appropriate public education ("FAPE") to K.R.O. for the 2024–2025 extended school year. *Id.* It sought an order requiring the Department to fund K.R.O.'s tuition at iBrain and related services—namely, transportation and nursing services. *Id.* The DPC also sought funding for K.R.O.'s placement at iBrain during the pendency of the due process proceedings, under 20 U.S.C. § 1415(j). *Id.* ¶ 69.

On September 3, 2024, impartial hearing officer ("IHO") Jaime Kotchek issued findings of fact and a decision (the "FOFD"). Dkt. 1-3. IHO Kotchek found that the Department had denied K.R.O. a FAPE; that her placement at iBrain was appropriate; and that the equities did not warrant a reduction in recovery. *See id.* at 6–12. The FOFD directed the Department to pay (1) K.R.O.'s iBrain tuition ($343,100.60) and (2) fees for related transportation ($191,111) and nursing services (up to $333,608 total). *Id.* at 13. Before the Department was obligated to make any such payments, however, the FOFD required Otero first to submit the following documentation substantiating that K.R.O. had actually used those services:

- For tuition, "a signed, notarized bill encompassing tuition costs owed by the Parent to the Private School";

- For transportation fees, "a signed, notarized bill encompassing costs owed by the Parent to the Transportation Company for the Student's use of transportation service to and from Private School for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service"; and

- For the nursing fees, "a signed, notarized bill encompassing costs owed by the Parent to the Nurse Company for the Student's individual, full-time nurse during transportation to and from Private School, and Student's attendance at Private School, for the extended 2024-2025 school year, together with an affidavit and invoices documenting that the Student uses the service and dates of service."

*Id*. The FOFD required the Department to make any such payments within 30 days of Otero providing this documentation. *Id*.

Both sides appealed to SRO Steven Krolak. *See* Dkt. 1-4 ("SRO Decision"). Otero appealed the FOFD insofar as it required her to furnish documentation that K.R.O. actually used transportation and nursing services, including as to which specific days, before becoming entitled to payment from the Department for such. *Id*. at 6–7. Otero argued that the SRO should instead award the amounts for those services as contracted with the service providers, without records showing that K.R.O. had actually used the services. *Id*. The Department cross-appealed the IHO's decision requiring it to fund K.R.O.'s placement at iBrain. *See id*. at 7.

On December 18, 2024, SRO Krolak dismissed both sides' appeals. *Id*. at 1. As to Otero's, he held:

> [I]t was not unreasonable for the IHO to require the parent to submit evidence of the actual use of the 1:1 nursing and transportation services as set forth in the contract. . . . [This] merely requires that parent submit evidence showing that the nursing services and transportation providers performed under the contracts, by showing that services were delivered pursuant to those contracts, prior to having the district make payments.

*Id*. at 13. SRO Krolak thus affirmed the documentation requirements set by the FOFD. *Id*. He also held that the Department was required to fund K.R.O.'s placement at iBrain for the 2024–2025 extended school year. *Id*.

Neither party appealed the SRO's decision.

**C. This Litigation**

On April 3, 2025, Otero initiated this lawsuit, seeking, *inter alia*, an order requiring the Department to fund K.R.O.'s transportation and nursing services without Otero's having to provide the documentation required by the FOFD. Dkt. 1. The next day, Otero moved for a preliminary injunction, Dkts. 6–7, which the Department opposed, Dkts. 11–13.

On July 24, 2025, the Court denied Otero's motion. Dkt. 16 (the "Decision"). It found that Otero had not shown she was entitled to relief under either basis she advanced: (1) the IDEA's stay-put provision, 20 U.S.C. § 1415(j), or (2) the traditional preliminary injunction standard. As to the first, the Court noted, the Second Circuit has held that the stay-put provision does not create an entitlement to immediate payment unless a child's parent establishes that non-payment jeopardizes the child's educational placement. Decision at 9 (citing *Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024)). Because Otero had not claimed that her placement was in jeopardy—much less offered any evidence of such—the Court held that Otero was not entitled to immediate payment under the IDEA. Moreover, the Court held, Otero had not submitted documentation, as required by the FOFD, showing that K.R.O. had "actually used" the transportation and nursing services for which she sought funding. *Id*. at 11. The stay-put provision did not entitle Otero to circumvent that requirement without making the showing, under *Mendez*, *supra*, of risk to K.R.O.'s educational placement. Second, under the traditional preliminary injunction factors, the Court held that Otero had not established

irreparable harm—"the single most important prerequisite" for such relief. *Id*. at 13–14 (quoting *Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) (summary order)). The Court found that Otero had not shown that K.R.O.'s placement at iBrain was in danger due to the non-payment of funds for related services. *Id*. at 14. And, the Court noted, the Department had attested that it stood ready to disburse such upon Otero's submission of the documentation required by the FOFD. *Id*. On February 17, 2026, the Court denied Otero's motion for reconsideration of the Decision. Dkt. 21.

On April 29, 2026, the Court held a pre-motion conference as to the parties' cross-motions for summary judgment. *See* Dkt. 37 ("PMC Tr."). The sole issue to be briefed was whether Otero had provided the Department with documentation that adequately showed K.R.O.'s actual use of transportation and nursing services, as required by the FOFD. *See id.* at 2–3. On May 13, 2026, Otero moved for summary judgment, Dkts. 30, 32 ("Otero Mem."), attaching a declaration, Dkt. 31. On May 27, 2026, the Department cross-moved for summary judgment and opposed Otero's motion, Dkts. 33, 34 ("Dep't Opp'n"), attaching declarations and exhibits, Dkts. 35, 36. On June 3, 2026, Otero opposed the Department's motion and replied as to her motion. Dkt. 39 ("Otero Opp'n"). On June 10, 2026, the Department replied as to its motion. Dkt. 40 ("Dep't Reply").

## II. Applicable Legal Standards

To prevail on a motion for summary judgment, the movant bears the burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A dispute about a genuine issue exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v.*

*County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party, *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), resolving "all ambiguities" in its favor, *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment in the context of an IDEA case is a "pragmatic procedural mechanism for reviewing administrative decisions." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). Although a "district court must base its decision on the preponderance of the evidence," it ultimately must "give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C.*, 553 F.3d at 171 (cleaned up).

## III. Discussion

The central issue before the Court is narrow: whether the documentation provided by Otero, concerning transportation and nursing services for K.R.O., meets the FOFD's requirements for such. Otero also moves for summary judgment on other grounds her counsel did not raise at the pre-motion conference.[1] The Department, in addition to its cross-motion on the main issue and opposition to Otero's other motions, asks the Court to maintain jurisdiction

---

[1] Otero also (1) argues that the Department must pay "contractual late fees and interest" on fees ostensibly owed for the transportation and nursing services, Otero Mem. at 13–16; (2) seeks a declaration that K.R.O.'s pendency placement for the 2024–2025 extended school year was at iBrain, *id*. at 16–18; and (3) moves for attorneys' fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i), *id*. at 18–19.

over this case to determine whether sanctions should be imposed on Otero's counsel, affiliated with the Liberty & Freedom Legal Group. Dep't Opp'n at 3.

### A. Adequacy of Otero's Documentation Related to Transportation and Nursing Services for K.R.O.

It is undisputed that the FOFD made the Department's obligation to pay for K.R.O.'s transportation and nursing services contingent on Otero's first providing the following documents to substantiate K.R.O.'s actual use of those services: for either service, "a signed, notarized bill encompassing costs owed by the parent to the transportation company [and/or nursing company]" for K.R.O.'s "use of transportation service to and from [iBrain, and/or her use of an individual, full-time nurse during such transportation]" for the 2024–2025 extended school year, "together with an affidavit and invoices documenting that the Student uses the service and dates of service." FOFD at 13 (cleaned up). The SRO emphasized that the legitimate purpose of these requirements was to prove K.R.O.'s "actual use" of such services, by making payment contingent on Otero's production to the Department of "documentation of the days on which the student actually used the services." SRO Decision at 6–7, 13.

Otero here attached two affidavits and an iBrain attendance log for K.R.O., arguing that these satisfy the above requirements. The first affidavit is by Chesky Jacobowitz, chief operating officer of B&H Healthcare Services Inc. ("B&H"). Dkt. 31, Ex. A ("Jacobowitz Aff."). It is notarized and dated January 7, 2026, and states as follows:

- "I am familiar with the nursing services [that B&H] is providing to [K.R.O.] for the 2024–2025 school year."
- "Services are provided under a contract entered with Maylene Otero, the parent of [K.R.O.]."
- "Services include: (a) 1:1 nurse for [K.R.O.] during transportation between home and school (90 minutes each way); and (b) 1:1 nurse for [K.R.O.] during school hours (8 hours per day)."

- "Services are billed at an annual rate of $333,608, with three payment installments: Payment 1: $56,848.00 due on July 2, 2024, Payment 2: $106,216.00 due on September 5, 2024, and a final payment, Payment 3: $170,544.00 due on January 2, 2025."

- "During the 2024–2025 school year nursing services were provided per the terms of the contract on a total of 223 school days between July 2, 2024, and June 27, 2025. At the present time, the contracted nursing fees payable by the parent total $333,608.00 in addition to late fees which continue to accrue, as per the terms of the contract."

*Id.* ¶¶ 2–7.

The second affidavit is by Christine Soifer, a member of Sisters Travel and Transportation Services, LLC ("Sisters"). Dkt. 31, Ex. B ("Soifer Decl."). It was also notarized on January 7, 2026; Soifer appears to have been mis-dated her signature "1-7-25." *Id.* Soifer avers:

- "[Sisters] has entered into a contract with MARLENE [sic] OTERO, the parent/guardian for [K.R.O.], . . . to provide special school transportation services . . . for the 2024-2025 School Year."

- "[These services] include round-trip transportation of [K.R.O.] to/from home and school (AM and PM trips) in a wheelchair accessible vehicle (i.e., lift bus/wheelchair ramp) that is climate controlled (i.e., air conditioning) and sized to accommodate a regular size wheelchair with limited travel time of 90 minutes for each trip."

- "All [such services] will be billed at an annual rate of $191,111.00 . . . . CLIENT shall pay [these fees] with three payment installments: Payment 1: $31,851.25 due on July 2, 2024, Payment 2: $63,704.25 due on September 1, 2024, and a final payment, Payment 3[:] $95,555.00 due on January 1, 2025."[2]

- "During the 2024-2025 school year transportation services were provided per the terms of the contract on a total of 223 school days between July 2, 2024, and June 27, 2025. At the present time, the contracted transportation fees payable by the parent total $191,111.00 in addition to late fees which continue to accrue, as per the terms of the contract."

*Id.* ¶¶ 2–5.

---

[2] Soifer's affidavit did not define "CLIENT," as used in this paragraph. It elsewhere defined K.R.O. as "STUDENT," and did not assign "MARLENE OTERO" a specific term.

The iBrain attendance sheet ostensibly covers K.R.O.'s attendance between July 1, 2024 and June 30, 2025, the duration of the extended school year. Dkt. 31, Ex. C ("iBrain Record"). A box for each day is either greyed out or marked with "Y." The sheet states: "Y = present or excused absence or home services." It also states, "N = unexcused absence," but the "N" notation does not appear on K.R.O.'s attendance sheet. For each month, it tallies days "present" or "absent." It states that K.R.O. had "0" absences every month, and between 15 and 21 days per month "present." It tallies the days K.R.O. was "present" as 223.

These materials fail to meet the FOFD's straightforward and basic requirement of proving K.R.O.'s "actual use" of the services by indicating which days she used either related service. SRO Decision at 13. As this Court admonished Otero's counsel at the pre-motion conference, it is "clearly not appropriate"—under the FOFD and the Court's prior rulings in this case interpreting that decision—to file declarations merely stating that services were used on "223 days," or the entirety of the extended school year, without stating which days these were used. PMC Tr. at 4. The generic affidavits submitted by Otero have precisely that defect. They do not specify the "dates of service," FOFD at 13—*i.e.*, on which days during the school year in question K.R.O. used the transportation and/or nursing services of the providers.

Nor does iBrain's attendance sheet plug that evidentiary hole, for two reasons. First, although the sheet reflects 223 "Y" notations on specific days of the 2024–2025 extended school year," it defines that notation as encompassing when K.R.O. was "present *or excused absence or home services*." iBrain Record at 1 (emphasis added). In the latter two circumstances, transportation and nursing services would not have been reimbursable, under the FOFD and SRO Decision. Second, even had K.R.O. been physically present at iBrain on 223 days—which is far

from clear based on this record—the sheet does not support that B&H or Sisters provided related services on those two days.

This sparse and ambiguous evidence adduced by Otero does not meet the FOFD's requirements to substantiate K.R.O.'s "actual use" of transportation or nursing services. That is despite her counsel having now had nearly two years—since the September 3, 2024 FOFD—to produce such basic documentation. The Court, in its July 24, 2025 decision, observed that the "lack of documentation to date . . . invites concern 'whether there was any fraud or collusion in generating (or inflating) the fees to be charged to the Department.'" Decision at 11 (*quoting E.M v. N.Y.C. Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014) (cleaned up)). That is all the more so today, after another year without production of such records and after the Court repeatedly identified the information Otero needed to provide to comply with the FOFD's requirements. *See, e.g.*, Decision at 11–12 ("The case law recognizes the State's valid interest in guarding against the risk of artificially inflated payment requests stemming from sham transactions in which parents and service providers tacitly understand that, should funding from the public school district not be granted, the parent will be relieved from payment." (cleaned up)); *Mr. & Mrs. A. ex rel. D.A. v. N.Y.C. Dep't of Educ.*, 769 F. Supp. 2d 403, 429–30 (S.D.N.Y. 2011) (similar); *E.M.*, 758 F.3d at 461 (similar); *Moonsammy v. Banks*, No. 23 Civ. 10491 (PAE), 2024 WL 4277521, at *11 (S.D.N.Y. Sept. 23, 2024) (similar); *see also Davis v. Banks*, No. 22 Civ. 8184, 2023 WL 5917659, at *5 (S.D.N.Y. Sept. 11, 2023) (emphasizing "legitimate concerns about waste, fraud, and abuse" as to funding for related services at iBrain).

As to this claim, the Court thus denies Otero's motion for summary judgment and grants the Department's cross-motion.

**B. Otero's Other Motions**

Notwithstanding the parties' agreement at the pre-motion conference that the above issue would be the only one briefed, Otero makes three additional motions, which the Department opposes. These are all easily put aside.

First, Otero's counsel argues that the Department must also pay "contractual late fees and interest" on fees ostensibly owed for the transportation and nursing services. *See* Otero Mem. at 13–16. As reviewed above, the Court finds that Otero has not complied with the FOFD's requirements to provide documentation substantiating K.R.O.'s actual use of these related services. Because the Department is not obligated to pay any fees for these purported services, it is likewise not required to pay "late fees and interest" on those fees. Quite to the contrary, it is *Otero's* failure to provide those basic records after almost two years—not the Department's failure to make any required payments, which it has stood ready to disburse upon receipt of compliant documentation—that has caused any late fees and/or interest to accrue.

Second, Otero seeks a declaration that K.R.O.'s pendency placement for the 2024–2025 extended school year was at iBrain, to "avoid[] any advisory ruling concerning later school years or proceedings not before the Court." *Id*. at 16–18. This claim is abandoned and moot. As the FOFD stated, the issue of "pendency is now moot" because Otero "was awarded her entire request." FOFD at 13; *see also* SRO Decision at 6 n.4 (same). "Otero did not challenge the IHO's pendency determination before the SRO, so she failed to preserve the issue." Decision at 8 n.6.

Third, Otero moves for attorneys' fees, to the extent that she is a prevailing party here, pursuant to 20 U.S.C. § 1415(i)(3)(B)(i). *See* Otero Mem. at 18–19. She has not prevailed, so the motion is denied.

### C. The Department's Request That the Court Retain Jurisdiction to Impose Sanctions on Otero's Counsel

In its reply, the Department asks the Court not to close this case, so that the Court may impose sanctions on Otero's counsel. The Department states that opposing counsel "knowingly" asserted a "demonstrable falsehood" in arguing, in Otero's reply brief, that the FOFD only required documentation showing that the service providers performed under the contracts. Dep't Reply at 5 (citing New York Rule of Professional Conduct 3.3). The Department does not, however, squarely state whether it now moves for sanctions, and does not offer any additional analysis.

Without such a motion or a response from Otero's counsel, the Court is not in a position to assess whether sanctions are warranted. Within a week of this decision, the Department shall file any motion for sanctions; if such a motion is made, Otero's counsel shall respond within a week of that motion. If the Department does not so move by that date, the Court intends to direct the Clerk of Court to close this case at that time.

## CONCLUSION

For the above reasons, the Court finds that Otero has not complied with the FOFD's requirements to provide documentation substantiating K.R.O.'s actual use of transportation or nursing services related to her placement at iBrain during the 2024–2025 extended school year. It thus denies Otero's motion for summary judgment on that claim, and grants the Department's cross-motion. The grant of summary judgment to the Department resolves definitively that the Department is not required to reimburse Otero for any transportation or nursing expenses for that extended school year. The Court denies Otero's other motions concerning late fees and interest; a declaration as to K.R.O.'s pendency placement; and attorneys' fees.

Within a week of this decision, the Department may file a motion for sanctions against Otero's counsel; if such a motion is made, Otero's counsel shall respond within a week of that motion.

The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 30 and 33.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 20, 2026
New York, New York